# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 22-6158

ERIC D. BILHARZ, APPELLANT,

AND

No. 23-7931

ANTHONY J. PINTO, JR., APPELLANT,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued March 27, 2025                    Decided August 14, 2025)

*James D. Ridgway*, with whom *Glenn R. Bergmann* was on the brief, both of Rockville, Maryland, for appellant Eric D. Bilharz.

*Anthony J. Pinto, Jr.*, *pro se*.

*Glenn R. Bergmann* and *James D. Ridgway*, both of Rockville, Maryland, were on the brief for appellant Anthony J. Pinto, Jr., as amicus curiae.

*Ronen Z. Morris*, with whom *Richard J. Hipolit*, Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Abhinav Goel*, Acting Deputy Chief Counsel, all of Washington, D.C., were on the brief for appellee.

Before ALLEN, *Chief Judge*, and FALVEY and JAQUITH, *Judges*.

ALLEN, *Chief Judge*, filed the opinion of the Court. JAQUITH, *Judge*, filed an opinion concurring in part and dissenting in part.

ALLEN, *Chief Judge*: Appellant Eric D. Bilharz served the Nation honorably in the U.S. Marine Corps from June 1995 to June 1999 and later served in the Marine Corps Reserve and the Army National Guard through August 2003.[1] Appellant Anthony J. Pinto, Jr., served the Nation

---

[1] *Bilharz* Record (R.) at 2692.

honorably in the U.S. Army from March 1968 to October 1969.[2] In these appeals, which are timely and over which the Court has jurisdiction,[3] appellants respectively contest Board of Veterans' Appeals (Board) decisions issued on July 5, 2022, for Mr. Bilharz and December 6, 2023, for Mr. Pinto.[4] While we will describe the Board's decisions in more detail below, suffice it to say that both Mr. Bilharz and Mr. Pinto were unhappy with the Board's decisions and appealed to the Court.

On its own initiative, the Court consolidated these appeals in the interest of judicial economy because they each raise the same important and unresolved question of law, thus requiring a precedential decision. That question is whether, for appeals processed under the Veterans Appeals Improvement and Modernization Act of 2017 (AMA),[5] a claimant's right to fair process in VA's administrative appeal system (or the right to due process of law under the Fifth Amendment to the Constitution) requires the same Board member who conducts a Board hearing to also render a decision of the Board in a given case. In *Frantzis v. McDonough*,[6] the Federal Circuit agreed with this Court's conclusion that the AMA does not *statutorily* require the same Board member who presides at a hearing to also render a decision on a claim.[7] Neither the Federal Circuit nor our Court reached the question presented here concerning fair process or due process.[8] We answer that question today.

To preview our consideration of the fair process argument, we first consider the relationship between the fair process doctrine and the Due Process Clause. We explain that, in accordance with recent Federal Circuit precedent, "[t]he fair process doctrine is a recognition that due process applies in the claimant process."[9] So, arguments about fair process are properly understood to be nothing more than due process contentions in other clothes. Along the way, we consider our earlier precedents that proceed as if fair process provides different constraints than does due process. We acknowledge that these earlier decisions may rest on an increasingly unstable

---

[2] *Pinto* R. at 402.

[3] *See* 38 U.S.C. §§ 7252(a), 7266(a).

[4] *Bilharz* R. at 5; *Pinto* R. at 5.

[5] Pub. L. 115-55, 131 Stat. 1105 (Aug. 23, 2017).

[6] 35 Vet.App. 354 (2022), *aff'd*, 104 F.4th 262 (Fed. Cir. 2024).

[7] *Frantzis*, 104 F.4th at 265.

[8] *Id*. at 266; *Frantzis*, 35 Vet.App. at 367.

[9] *Frantzis*, 104 F.4th at 266.

2

foundation. But we need not definitely resolve the continued validity of our decisions that may consider fair process to be more expansive than due process today because we hold that due process and fair process principles, to the extent there are differences between them, lead to the same result in these appeals. Neither the Due Process Clause nor the fair process doctrine (if different) categorically prohibits the practice of having different Board members conduct a hearing and render a decision on a claim for benefits. And even if using different Board members to conduct a hearing and render a decision on the same claim could result in an as-applied violation of due process or fair process, neither appellant has shown such a violation here.

There is also a second issue these appeals present that requires a precedential decision. In *Bryant v. Shinseki*, the Court held that Board members presiding over hearings were subject to certain duties when conducting those hearings (more on the specifics of those duties later).[10] But *Bryant* concerned administrative appeals in the legacy system. The question we consider today is whether changes to VA's regulations implementing the AMA abrogated the duties we recognized in *Bryant*. As we explain below, while the regulatory underpinning has changed from the one we recognized in *Bryant* for legacy appeals, the substance of a Board member's duties when conducting a hearing remain the same. In terms of application, we conclude that the Board member conducting the hearing in Mr. Pinto's case did not comply with the *Bryant* duties. That error warrants remand of Mr. Pinto's appeal.

Finally, we address Mr. Bilharz's assertion that the Board failed to provide an adequate statement of reasons or bases for its decision denying his claims. We find this argument compelling and conclude that remand is warranted on that basis.

We proceed as follows. First, we describe the procedural history of each appellant's claims, as well as the parties' positions on the issues before the Court. Next, we address the fair process/due process argument, concluding that neither appellant is entitled to relief on this issue. We then consider the *Bryant* question and explain why remand of Mr. Pinto's claim is warranted on that point. Finally, we explain why remand of Mr. Bilharz's claims is also appropriate. The bottom line is that we will set aside both Board decisions on appeal and remand the matters concerning both appellants for proceedings consistent with this opinion.

---

[10] 23 Vet.App. 488, 492-98 (2010).

One final point before proceeding: We note that the Court held oral argument in these consolidated cases at Suffolk University Law School in Boston, Massachusetts. The Court thanks the students, staff, and faculty at Suffolk Law School for their hospitality.

## I. BACKGROUND AND PARTIES' ARGUMENTS

### A. Procedural Histories

#### 1. Mr. Bilharz's Appeal

Mr. Bilharz appeals the July 5, 2022, Board decision that denied entitlement to service connection for (1) a back disability, including arthritis of the thoracic spine and lumbar strain; (2) peripheral neuropathy of the right lower extremity; (3) peripheral neuropathy of the left lower extremity; (4) a cervical spine disability, including arthritis and strain; (5) a right hip disability; (6) a left hip disability; and (7) a bilateral foot disability, including pes planus.[11] He originally filed claims for these conditions in December 2014.[12] In a June 2015 rating decision, the agency of original jurisdiction (AOJ) denied service connection for all the claims.[13] Mr. Bilharz, thereafter, submitted a Notice of Disagreement (NOD),[14] and VA issued a Statement of the Case (SOC) in April 2016.[15] His appeal proceeded under the legacy appeals system because the decision for which Mr. Bilharz sought Board review was issued before February 19, 2019.[16]

In November 2018, Mr. Bilharz testified at a hearing before a Board member, again with his appeal proceeding under the legacy system.[17] Following the hearing, in June 2019, the Board remanded his claims for additional development.[18] In December 2019, a VA medical opinion

---

[11] *Bilharz* R. at 5.

[12] *Id.* at 2515-30.

[13] *Id.* at 2228-35.

[14] *Id.* at 2177-78.

[15] *Id.* at 2015-35.

[16] *Id.* at 1899; *see also Mattox v. McDonough*, 56 F.4th 1369, 1375 (Fed. Cir. 2023).

[17] *Bilharz* R. at 1226-45.

[18] *Id.* at 1206-17.

addressed all but Mr. Bilharz's cervical spine condition.[19] The AOJ then issued a Supplemental SOC (SSOC) in June 2020.[20] By that time, the AMA appeal system had become operational.[21]

Although his claims had been proceeding in the legacy system, VA notified Mr. Bilharz that he had the option to opt into the AMA system.[22] Mr. Bilharz exercised his option to have his appeal processed in the AMA system.[23] He was then faced with a choice about how to proceed in the new system. In the AMA system, "claimants may now choose from three procedural lanes to obtain review of their claim within [1] year of the initial decision (in contrast to the legacy system's single pathway for appeal to the Board)."[24] Those lanes are the following: (1) filing a supplemental claim with new and relevant evidence to seek readjudication of the claim based on all the evidence of record; (2) filing a request for higher level review (HLR) of the AOJ decision; and (3) filing an NOD to directly appeal to the Board.[25] When a claimant selects the third option of a Board hearing, the claimant is faced with another choice—which Board docket to select: direct review, evidence submission, or hearing. Mr. Bilharz elected the Board's direct review docket.[26]

This all led to the July 2022 decision on appeal. As particularly relevant to this appeal, the Board noted that the Board member who was rendering the decision was not the same Board member who had conducted the 2018 hearing.[27] The Board cited *Frantzis* as precedent for the propriety of not requiring the same Board member to both conduct the hearing and render the decision.[28] The Board ultimately denied service connection for all seven conditions at issue, and this appeal followed.

---

[19] *Id.* at 932-1009.

[20] *Id.* at 753-68.

[21] *Mattox*, 34 Vet.App. at 69.

[22] *Bilharz* R. at 753.

[23] *Id.* at 747-48.

[24] *Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1119 (Fed. Cir. 2021) (citing 38 U.S.C. § 5104C(a)(1)).

[25] *See* 38 U.S.C. §§ 5104C(a)(1)(A)-(C), 5104B, 5108, 7105; *Mil.-Veterans Advoc.*, 7 F.4th at 1117, 1119.

[26] *Bilharz* R. at 747-48; *see Mil.-Veterans Advoc.*, 7 F.4th at 1119 (citing 38 U.S.C. § 5104C(a)(1)).

[27] *Bilharz* R. at 8.

[28] *Id.* (citing *Frantzis*, 35 Vet.App. at 354). At the time of the Board's decision, the Federal Circuit had not yet affirmed our decision in *Frantzis*.

### 2. Mr. Pinto's Appeal

Mr. Pinto appeals the December 6, 2023, Board decision denying an initial disability rating higher than 30% for PTSD and entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).[29] He filed his initial claims for service connection for PTSD and other conditions in May 2021.[30] In a May 2022 rating decision, the AOJ granted service connection for PTSD with a 30% rating effective March 17, 2021.[31]

Unlike the case for Mr. Bilharz, Mr. Pinto's claim was processed under the AMA at all times.[32] Mr. Pinto disagreed with the May 2022 rating decision, electing to appeal the AOJ's decision to the Board, opting for the hearing docket.[33] In July 2023, he testified before a Board member, discussing, among other things, his PTSD symptoms, including depression, anxiety, anger issues, and sleep disturbances; he claimed these symptoms significantly impaired his occupational and social functioning.[34] During the Board hearing, the presiding Board member noted:

> Well, with that I'd also like to thank Mr. Pinto for his service. I'd also like to thank you for being here today talking to a stranger about these issues, as it is never comfortable, but it is, you know, very helpful to me to hear directly from you about how your condition impacts you, so thank you for taking the time today, and finally, thank you for your patience as well. I think we all know, sitting here, that VA is not always the fastest at -- at getting through all this stuff, but, you know, I just really appreciate your patience as we work to get you the benefits you're entitled to, sir.[35]

In December 2023, the Board issued the decision on appeal, denying Mr. Pinto an increased rating for PTSD and entitlement to TDIU.[36] The Board member who authored the December 2023 decision was not the same Board member who presided at the July 2023 hearing.[37]

In its decision, the Board found that Mr. Pinto's PTSD symptoms caused no more than occasional occupational and social impairment with occasional decrease in work efficiency and

---

[29] *Pinto* R. at 5.

[30] *Id.* at 462-65.

[31] *Id.* at 145, 162-64.

[32] *Mattox*, 34 Vet.App. at 70.

[33] *Pinto* R. at 77.

[34] *Id.* at 60-74.

[35] *Id.* at 73.

[36] *Id.* at 5.

[37] *Id.* at 20, 59.

6

intermittent periods of inability to perform occupational tasks, aligning with a 30% rating under 38 C.F.R. § 4.130, Diagnostic Code 9411.[38] The Board also determined that Mr. Pinto did not meet the schedular criteria for TDIU and that his service-connected disabilities did not preclude substantially gainful employment.[39]

## B. Parties' Arguments

Before proceeding to outline the parties' arguments, there are a few preliminary points to make. Mr. Pinto is proceeding pro se. As such, he is entitled to both a sympathetic reading of his briefs and a liberal construction of his arguments.[40] In contrast, Mr. Bilharz is represented by counsel. We assume that counsel advances the arguments they wish to make on behalf of their client and abandons arguments that they do not advance.[41] We also thank counsel for Mr. Bilharz who accepted the Court's invitation to file an amicus curiae brief concerning Mr. Pinto's appeal.[42] Unless there is a reason to do otherwise, we generally refer to the arguments of Mr. Bilharz and Mr. Pinto collectively as "appellants' arguments."

### 1. Fair Process and Due Process

Appellants contend that the AMA procedure by which the Board member who presides at a hearing is not required to be the same Board member who renders a decision in their administrative appeals categorically violates their right to fair process.[43] In that regard, appellants argue that the change of Board members deprives them of a meaningful opportunity to be heard by the factfinder.[44] Further, they maintain that the AMA practice undermines the claimant-friendly nature of VA adjudications.[45] Alternatively, appellants argue the AMA practice constitutes a violation of the Due Process Clause.[46] They contend that the Board member who presides over a hearing evaluates credibility, clarifies factual ambiguities, and focuses testimony on key legal and

---

[38] *Id*. at 9-14.

[39] *Id*. at 19.

[40] *See De Perez v. Derwinski*, 2 Vet.App. 85, 86 (1992).

[41] *See Pederson v. McDonald*, 27 Vet.App. 276, 281-86 (2015) (en banc).

[42] *See* Appellants' Supplemental (Supp.) Brief (Br.) at 1.

[43] *Id*. at 7.

[44] Appellant's Br. at 6.

[45] Appellants' Supp. Br. at 7.

[46] Appellant's Reply Br. at 1-6.

7

evidentiary issues, all of which inform the final decision.[47] By extension, appellants argue that by assigning the decision to a different Board member than the member who conducted the hearing, the Board undervalues hearing testimony and fails to afford veterans adjudicatory consistency and transparency that fair process requires.[48]

Appellants assert that *Frantzis* did not foreclose a fair process challenge under the AMA and that a Board member's role during a hearing is more than just gathering evidence—it is integral to the adjudication process.[49] Appellants ultimately contend that the Board's reliance on *Frantzis* was misplaced because that decision did not address whether fair process or due process require the same Board member to adjudicate a claim after conducting a hearing.[50] They argue that, at a minimum, the Board should provide notice that a different Board member will decide the case and offer an opportunity for a supplemental hearing or submission of additional evidence to ensure that claimant's administrative appeal receives a full and fair review.[51]

The Secretary argues that the Board's adjudicative process fully complied with the statutory and regulatory requirements under the AMA and that appellants' fair process claims lack merit.[52] Relying on *Frantzis*, the Secretary maintains that nothing in 38 U.S.C. § 7107 or 38 C.F.R. § 20.707 requires the same Board member to both conduct a hearing and issue the final decision on a claim.[53] The Secretary contends that the VA system is designed for efficiency and that requiring the same Board member to decide an appeal after conducting a hearing would unnecessarily burden the adjudication process, leading to delays and inconsistencies in the timing of case resolution.[54]

Continuing, the Secretary maintains that nothing in the Court's fair process jurisprudence, or in the Due Process Clause, requires the same Board member who presides over a hearing to also render the final decision on a claim. The Secretary argues that claimants receive adequate procedural safeguards, including the right to submit additional evidence, request another hearing,

---

[47] Appellant's Br. at 7-8.

[48] *Id.*

[49] *Id.*

[50] Appellant's Br. at 9-10.

[51] Appellants' Supp. Br. at 10.

[52] Secretary's Supp. Br. at 6.

[53] *Id.*

[54] *Id.* at 10-12.

or appeal the Board's decision to this Court, without the necessity to resort to fair process or due process.[55]

### 2. Bryant *Duties*

As we noted above, because he is proceeding without representation, we liberally construe Mr. Pinto's arguments on appeal.[56] In addition to the fair process/due process issue we have discussed, we construe Mr. Pinto's appeal to include a contention that the Board failed to fulfill its duty to fully explain the issues and suggest the submission of potentially overlooked advantageous evidence during the Board hearing.[57] Mr. Pinto also contends that the Board failed to suggest advantageous evidence that supported his testimony regarding the impact of his PTSD symptoms, particularly his documented anger issues, social withdrawal, and memory impairments, in determining that he did not meet the criteria for an increased rating or TDIU.[58]

Determining whether the Board member who presided over Mr. Pinto's hearing erred requires us to address an unresolved question of law: Is a Board member who presides over a hearing in an appeal proceeding under the AMA required to comply with the duties we recognized in *Bryant*?[59] Amicus argues Board members are still bound by the *Bryant* duties. Amicus asserts that changes to 38 C.F.R. § 3.103 (the regulation on which the Court relied in *Bryant*) made as part of the implementation of the AMA did not eliminate Board members' obligations that we discussed in *Bryant*.[60]

In contrast, the Secretary contends that *Bryant* no longer applies to Board hearings following the changes to § 3.103.[61] He argues that the changes to § 3.103 limit the obligations of hearing officers to hearings before the AOJ. So, according to the Secretary, there is no violation of the *Bryant* duties concerning Mr. Pinto because those duties no longer apply to Board members who preside at hearings under the AMA.

---

[55] *Id*. at 14-15.

[56] *See De Perez*, 2 Vet.App. at 86.

[57] Appellant's Informal Br. at 1-3. Mr. Bilharz does not argue that the Board member who presided over his hearing failed to conduct his hearing appropriately in any way. Because he is represented by counsel, we assume that the omission of any such argument is intentional. *See Pederson*, 27 Vet.App. at 281-86. So, we consider the issue concerning the Board member's duties when presiding at a hearing only with respect to Mr. Pinto.

[58] *Id.*

[59] 23 Vet.App. at 488.

[60] Appellants' Supp. Br. at 14.

[61] Secretary's Supp. Br. at 15.

*3. Other Legal Arguments*

Mr. Bilharz's principal argument focuses on the fair process/due process issue we discussed above. But he has backup arguments. His first alternative argument seeks remand because he asserts the Board relied on an inadequate medical opinion.[62] He also asserts that the Board overlooked favorable evidence and failed to properly consider his hearing testimony about the long-term impact of his service-related injuries.[63] In that regard, he contends that the Board did not provide an adequate statement of reasons or bases for erroneously dismissing his testimony.[64] The Secretary defends the Board's decision in full on these grounds and urges affirmance.[65]

## II. ANALYSIS

We now turn to our resolution of the merits of the appeals before us. We briefly preview our discussion here.

We first address appellants' contention that it is a categorical violation of either the fair process doctrine or the Due Process Clause when the Board member who renders a decision on a claim is not the same Board member who presided over a hearing on that claim under the AMA. We consider how the fair process doctrine relates to due process principles, concluding that fair process is, at base, nothing more than a requirement that VA provide claimants with due process. Even if there is daylight between those doctrines, we reject appellants' categorical argument that the same Board member who conducts a hearing must always be the one who renders a decision in the case. Perhaps there could be a situation in which a particular claimant's rights were violated because the Board member who rendered a decision was not the same Board member who conducted a hearing—an as-applied violation. But we see no evidence to support such an as-applied violation here for either Mr. Bilharz or Mr. Pinto.

We then consider whether the duties imposed on Board members conducting hearings that we recognized in *Bryant* under the legacy system apply to Board members conducting hearings under the AMA. We conclude that Board members conducting AMA hearings are still bound to comply with the duties that we recognized in *Bryant*. However, as we explain, the regulatory

---

[62] Appellant's Br. at 18-20.

[63] *Id*. at 14-16.

[64] *Id.*

[65] Secretary's Br. at 11-16 (Bilharz).

10

anchor for those duties is different under the AMA than it is under the legacy system. Having determined that the *Bryant* duties remain applicable in the context of AMA hearings, we then explain why we conclude that the Board member who conducted Mr. Pinto's hearing did not comply with those duties, which necessitates a remand.

Finally, we consider Mr. Bilharz's alternative argument that the Board failed to provide an adequate statement of reasons or bases for denying his claims. As we explain, we agree that the Board's statement of reasons or bases is inadequate, an error that requires that we set aside the Board's decision in Mr. Bilharz's case and remand his claims.

### A. Fair Process/Due Process Arguments

We first consider appellants' argument that it is a categorical violation of either fair process or due process when a Board member renders a decision in a case if a different Board member presided over a hearing in that case. We reject that argument, although we don't foreclose the possibility that there could be a violation of fair process/due process principles in a specific case. But we don't see that here for either Mr. Bilharz or Mr. Pinto.

### 1. The Law

Our Court has long required that VA must comply with fair process in the administrative adjudication process, what is referred to as the "fair process doctrine."[66] The fair process doctrine stems from the Court's decision in *Thurber v. Brown*, in which the Court held that "before the [Board] relies, in rendering a decision on a claim, on any evidence developed or obtained by it subsequent to the issuance of the most recent SOC or SSOC with respect to such claim, the [Board] must provide a claimant with reasonable notice of such evidence and of the reliance proposed to be placed on it, and a reasonable opportunity for the claimant to respond to it."[67] The holding in *Thurber* was based, in part, on the principles of "procedural regularity and basic fair play," which the Court drew from a variety of sources, the most prominent being the Constitution of the United States.[68] The variety of sources that the Court used included the general structure of VA claims adjudication,[69] the Administrative Procedure Act (APA), and the Federal Rules of Evidence.[70]

---

[66] *Thurber v. Brown*, 5 Vet.App. 119, 126 (1993).

[67] *Id*.

[68] *Id.* at 123.

[69] "The entire thrust of [] VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process." *Id.*

[70] *See id.* at 122-26; *see also Austin v. Brown*, 6 Vet.App. 547, 552 (1994) (holding "that basic fair play requires that

11

The Court's caselaw is "clear 'that the principle of fair process applies throughout the process of evidentiary development.'"[71] Less clear, today at least, is the source of the doctrine, in particular how the fair process doctrine relates to due process under the Constitution. As we noted, *Thurber* relied on a variety of legal sources to craft the doctrine, including the Constitution. But we recognize that the Court has described a claimant's right to fair process as one that is "primarily based on the underlying concepts of the VA adjudicatory scheme, not the U.S. Constitution."[72] So, it is possible to read our cases as suggesting that the fair process doctrine requires procedures that would not be mandated via the Due Process Clause.

As the Court recently described:

> The doctrine supplements statutes and regulations "in situations where no particular procedural process is required" but there can be discerned an implicit need for additional process "when viewed against the underlying concepts of procedural regularity and basic fair play of the VA benefits adjudicatory system," a system which "provides for notice and opportunity to be heard at virtually every step."[73]

We have also cautioned that "while fair process supplements the procedural rules of statutes and regulations, it cannot supplant them."[74] In addition, we have recognized that the fair process doctrine is not static. "When VA procedural rules are validly altered or amended, the fair process doctrine must adapt to that new reality."[75]

But there are serious constitutional issues implicated by a suggestion that the fair process doctrine could require VA to employ procedures that are not mandated by statutes or regulations and that are not required as a matter of constitutional due process. If Congress has not required a certain procedure and the Constitution does not mandate such a procedure be used, we struggle to see on what basis a court could impose such a procedure on VA. Reliance on the general pro-

---

evidence be procured by the agency in an impartial, unbiased, and neutral manner.").

[71] *Brack v. McDonough*, 37 Vet.App. 172, 176 (2024) (internal citation omitted).

[72] *Prickett v. Nicholson*, 20 Vet.App. 370, 382 (2006), *aff'd sub nom. Prickett v. Mansfield*, 257 F. App'x 288 (Fed. Cir. 2007).

[73] *Brack*, 37 Vet.App. at 175 (quoting *Bryant v. Wilkie*, 33 Vet.App. 43, 46 (2020)). Note that the *Bryant* decision that the *Brack* Court quoted is a different case than the *Bryant* decision we consider in this opinion concerning the duties of Board members conducting hearings.

[74] *Brack*, 37 Vet.App. at 176.

[75] *Id*.

12

claimant VA system seems a slender reed on which to base such judicial authority. In short, we are troubled by a fair process doctrine not tethered to constitutional due process. Luckily, we need not confront our concerns here because, as we explain, we think the caselaw, particularly from the Federal Circuit, has made clear that fair process is effectively due process. If there could be a conflict between our precedent and that of the Federal Circuit, the Federal Circuit wins.

When the Court decided *Thurber*, basically launching the fair process doctrine, there was no precedent establishing that a claimant had a constitutionally protected property interest in the expectation of receiving VA benefits.[76] That is no longer the case. In *Cushman v. Shinseki*, the Federal Circuit held that entitlement to VA disability benefits is a property interest the Due Process Clause of the Fifth Amendment protects.[77]

This recognition that the Due Process Clause applies to VA benefits claims is important in terms of understanding the fair process doctrine today. We recognized as much in *Brack* where we noted that the fair process doctrine "is a non[]constitutional right fashioned at a time when it was not yet clear whether VA claimants had property rights protected by the Due Process Clause of the Fifth Amendment; such rights have since been recognized."[78] Finally, the Federal Circuit has recently made crystal clear that "the fair process doctrine is a recognition that due process applies in the claimant process."[79] In sum, it is clear to us that our fair process jurisprudence is best understood as being coextensive with well-established constitutional due process doctrine. Therefore, we will address appellants' contentions principally through the lens of due process.[80]

Procedural due process imposes constraints on governmental decisions that deprive persons of "life," "liberty," or "property" interests within the meaning of the Due Process Clause of the Fifth Amendment. "The fundamental requirement of due process is the opportunity to be

---

[76] *See Sprinkle v. Shinseki*, 733 F.3d 1180, 1185 (Fed. Cir. 2013); *Thurber*, 5 Vet.App. at 123.

[77] 576 F.3d 1290, 1298 (Fed. Cir. 2009); *see Sprinkle*, 733 F.3d at 1185 (noting that the court had held that "the Due Process Clause of the Constitution applies to proceedings in which [] VA decides whether claimants are eligible for veterans' benefits.").

[78] *Brack*, 37 Vet.App. at 175.

[79] *Frantzis*, 104 F.4th at 266; *Sprinkle*, 733 F.3d at 1185.

[80] Nothing in this opinion should be construed to suggest that we are overruling any precedent of this Court concerning the fair process doctrine. *See generally Rorie v. McDonough*, 37 Vet. App. 430 (2024), *appeal docketed*, No. 25-1194 (Fed. Cir. Nov. 19, 2024). Rather, we are merely applying our caselaw in harmony with recent binding Federal Circuit precedent. *See Frantzis*, 104 F.4th at 266. Even if the two lines of precedent can't live in harmony, there would be no need to overrule our precedent because Federal Circuit precedent controls. *See Rorie*, 37 Vet.App. at 443-44.

13

heard 'at a meaningful time and in a meaningful manner.'"[81] In keeping with the Federal Circuit's decision in *Sprinkle*, the Court relies on the Supreme Court's analytical framework set out in *Mathews v. Eldridge* and its progeny when evaluating issues concerning compliance with the Due Process Clause.[82] We assess the due process question by balancing three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest without additional procedures; and (3) the government's interest, including the fiscal and administrative burdens, that the additional or substitute procedure would entail.[83] Put plainly, "[a]ll that is necessary is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard,' to [e]nsure that they are given a meaningful opportunity to present their case."[84]

### 2. Categorical Application

We now apply the law to appellants' arguments. Recall, appellants principally contend that fair process/due process principles categorically prohibit a Board member to render a decision under the AMA if a different Board member presided over a hearing in that administrative appeal. Below, we reject that argument applying the due process framework that we have articulated. Then we briefly explain that even if the fair process doctrine somehow operated differently than the due process doctrine, we would still reject appellants' position.

### a. The Private Interests Affected

Concerning the first factor under *Mathews*, no one contests the importance of appellants' private interests. Both Mr. Bilharz and Mr. Pinto seek benefits that are related to their health and welfare. These are private interests of the highest order.[85] But the test is one that involves balancing. So, we move now to consider the other two factors—the risk of erroneous deprivation of benefits in the absence of the rule that appellants advocate for and the government's interest in VA efficiency under the current AMA system.

---

[81] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

[82] *See id*. at 335 (noting factors to balance when considering whether due process is satisfied); *Cushman*, 576 F.3d at 1300-01 (noting that a fundamentally fair adjudication within a procedural framework is constitutionally required in all cases) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12–13 (1994)).

[83] *Mathews*, 424 U.S. at 335; *Engdahl v. Dep't of Navy*, 900 F.3d 1572, 1575 (Fed. Cir. 1990).

[84] *Mathews*, 424 U.S. at 349 (quoting *Golberg v. Kelly*, 397 U.S. 254, 268-69 (1970)).

[85] *See id*. at 333.

14

b. Risk of Erroneous Deprivation

Starting with the risk of erroneous deprivation, recall that appellants argue that any time a Board member authors the Board's decision, but a different Board member conducted a Board hearing on a given claim, it violates due process. So, we assess the risk of deprivation question in the context of this categorical argument. Specifically, appellants contend that a different Board member conducting the hearing will result in an unacceptable risk of prejudice to claimants.[86] Appellants say this is so because each Board member approaches cases differently[87] and each Board member evaluates evidence differently, including witness credibility.[88]

We begin by acknowledging that there is no doubt that we have consistently recognized the importance of a Board hearing as part of ensuring due process.[89] We do not back away from that position today. But merely recognizing the importance of a hearing does not resolve issues about erroneous deprivation. Due process is flexible and context dependent. What we have to consider is the extent to which the risk of an erroneous deprivation is increased if an agency does not adopt appellants' proffered categorical rule. As we explain, appellants do not show that the adoption of their categorical rule meaningfully reduces the risk of an erroneous deprivation of their constitutionally protected property interest.

One reason that a hearing is important is because it allows a claimant to, colloquially, have their day in court.[90] But appellants' categorical rule is not needed to ensure that interest. Moreover, Board members are required to base their decision on a de novo review of the entire record, including transcripts of any hearings, regardless of whether they personally conducted the hearing on appeal.[91] So, appellants' categorical rule is not necessary to ensure that the Board bases a decision on all the relevant evidence.

Appellants' contention that because each Board member approaches cases and the law from different perspectives VA can only ensure due process by adopting appellants' proposed categorical prohibition is difficult to accept. While it is true that individual Board members bring

---

[86] Appellants' Supp. Br. at 1.

[87] Appellant's Br. at 10.

[88] Appellants' Supp. Br. at 2-3.

[89] *See Arneson v. Shinseki*, 24 Vet.App. 379, 382-83 (2011).

[90] *Id.*

[91] 38 U.S.C. § 7104(a).

15

their own perspectives and experiences to the Board, all Board members operate within the same statutory and regulatory framework and are bound by precedent from the Supreme Court, the Federal Circuit, and this Court.[92] Although differences unquestionably exist in how Board members approach decision-making, that is a recognition that Board members are human beings. We all approach situations based on our lived experiences. But that does not mean that the Constitution is offended in the way that appellants posit—and certainly not categorically. Indeed, if appellants were correct, their argument would undercut a widespread feature of administrative adjudication. In a broad array of administrative proceedings, it is not at all uncommon that the ultimate factfinder did not personally conduct an administrative hearing.[93]

We now turn to another feature of a hearing—the assessment of a witness's credibility. In *Arneson*, we explained that having a hearing before a Board member is important because it is the claimant's opportunity to personally impress their credibility on the Board.[94] We fully agree and in no way depart from that observation. But we don't see how the *categorical rule* that appellants propose protects this interest. If credibility is not an issue, which is so in many cases, then due process is not offended *categorically* if credibility is not an issue and different Board members preside at a hearing and render a decision on a claim.

The bottom line is that the risk of erroneous deprivation without appellants' categorical rule is low. Now, on to the third factor.

### c. The Government's Interest

The third factor we must consider is the government's interest. The Secretary argues that "the administrative burden of a same [Board member] requirement would be significant, and easily outweighs the minimal hypothetical harm allegedly caused by the existing process."[95] In particular, the Secretary points to the potential to cause further delay to "both the individual claimants and all

---

[92] *See Stillwell v. Brown*, 6 Vet.App. 291, 300 (1994). The Board is also bound to follow precedential decisions from VA's General Counsel further constraining Board members' individual approaches to decision making. 38 U.S.C § 7104.

[93] *See U.S. v. Raddatz*, 447 U.S. 667, 680 (1980) ("Generally, the ultimate factfinder in administrative proceedings is a commission or board, and such trier has not heard the witnesses testify.").

[94] *See Arneson*, 24 Vet.App. at 382.

[95] Secretary's Supp. Br. at 10.

16

other claimants waiting for their appeals to be decided."[96] Appellants contend that any potential disruptions to VA efficiency are outweighed by their private interests.

It seems to us that the categorical rule appellants propose unquestionably would increase the burden on the Agency. Saying that does not answer the ultimate question because we are dealing with a balancing test considering multiple factors. But in engaging in that balancing, we must consider the Agency's interests. Here, limiting the Board's flexibility by requiring the same Board member to decide a claim and preside at a hearing unquestionably affects that Agency's interest in adjudicating claims. Just consider that in fiscal year 2024, there were 138 Board members, and the Board decided 116,192 cases.[97] One does not have to engage in speculation to conclude that requiring that every decision be rendered by a Board member who presided at a hearing would increase the administrative burden on VA. It is self-evident.[98] In short, we conclude that this factor weighs against appellants' argument for their categorical rule.

### d. Balancing the *Mathews* Factors

Having assessed the three due process factors individually, we now turn to the balancing *Mathews* requires. As a general matter, due process "is a flexible concept," so it must be assessed in context.[99] Further, "[t]he role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional [or executive] choices of policy."[100] That concept is firmly rooted in the separation of powers.

With all this in mind, we conclude that balancing the *Mathews* factors requires that we reject appellants' categorical argument. Here, appellants' private interest is significant. However, the risk of erroneous deprivation of appellants' constitutional rights without their *categorical* rule is low. Plus, VA's interest in efficient claims processing—in a system that is already plagued by

---

[96] Secretary's Supp. Br. at 11.

[97] Board of Veterans' Appeals Annual Report Fiscal Year 2024, https://department.va.gov/board-of-veterans-appeals/wp-content/uploads/sites/19/2025/04/2024_bva2024ar.pdf.

[98] This observation does not mean that Congress could not mandate that the same Board member who presided at a hearing also render a decision on a claim. But Congress removed that requirement for the AMA. *Frantzis*, 104 F.4th at 265. Here, however, we are considering whether the Constitution requires this procedure.

[99] *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320 (1985); *Mathews*, 424 U.S. at 321 ("Due process is flexible and calls for such procedural protections as the particular situation demands." (internal citations omitted)).

[100] *Landon v. Plasencia*, 459 U.S. 21, 34-35 (1982).

delays and long waits for veterans to receive decisions—is high. On balance, we conclude that the Constitution does not require the categorical rule that appellants advocate for.

In sum, even factoring in the importance of the private interest at stake, the categorical prohibition that appellants propose stretches the principle of due process too far and would require the Court to act as a legislative body. The intentional changes Congress made in implementing the AMA explicitly removed the statutory requirement for the same Board member. That was a choice Congress was allowed to make, unless the Constitution made that choice unlawful. It did not. Accordingly, we hold that the Due Process Clause does not categorically require the same Board member who conducts a Board hearing to render a decision on a claim in that case.

### 3. As-Applied Application

We assume without deciding that a claimant could establish an as-applied violation of the Due Process Clause flowing from different Board members rendering a decision on a claim and presiding at a hearing in connection with that claim. For instance, if, at the Board hearing, a Board member was to directly inform appellant that their testimony was highly credible and then a different Board member was to issue the Board's decision but found that the appellant was not credible—that would seem to be a clear violation of due process. Of course, we think there would be a violation of due process principles under this scenario even if the *same* Board member presided at a hearing and then rendered the contradictory decision. But as we say, we will assume for purposes of this decision that even if appellants' categorical fair process/due process is without merit, they could theoretically prevail on an as-applied challenge.

Here, there is nothing in either Mr. Bilharz's or Mr. Pinto's hearings that support finding an as-applied violation of the Due Process Clause on the basis that the Board members who conducted their respective hearings did not render the final decisions in their cases. For starters, Mr. Bilharz presents no argument even attempting to show that he was harmed because the Board member who authored the Board's decision did not conduct his Board hearing. Instead, he relies purely on categorical arguments against the practice of having different Board members preside at hearings and render decisions. We have already rejected those arguments. And to be clear, even leaving aside the lack of developed as-applied argument, we have independently reviewed the record. There is nothing that supports finding an as-applied violation of Mr. Bilharz's due process rights.

We reach the same conclusion concerning an as-applied challenge for Mr. Pinto. Engaging in the most expansive effort to find a potential as-applied violation, the closest we get is the following statement from the presiding Board member near the end of Mr. Pinto's hearing:

> I'd also like to thank you for being here today talking to a stranger about these issues, as it is never comfortable, but it is, you know, very helpful to me to hear directly from you about how your condition impacts you, so thank you for taking the time today.[101]

Perhaps if the Board member deciding Mr. Pinto's case had found him not credible, one could craft an argument that the different Board member's statement of gratitude at the hearing raised an as-applied constitutional issue. *Perhaps.* But that is all beside the point because the Board member who rendered the December 2023 decision did not question Mr. Pinto's credibility. So, ultimately, as with Mr. Bilharz, there is nothing even approaching an as-applied violation of due process principles concerning Mr. Pinto's situation.

### 4. A Final Note: A Return to Fair Process

One final note: As we explained, we conclude that the appropriate lens through which to assess challenges framed under the fair process doctrine is via the constitutional due process test under *Mathews*. And we question whether it would be appropriate for the fair process doctrine to provide relief when the Due Process Clause would not. But even were we to disregard that concern and the contrary Federal Circuit precedent to assume that the fair process doctrine operates differently than due process principles, appellants would still not prevail. As we noted above, "fair process supplements the procedural rules of statutes and regulations, it cannot supplant them."[102] And we know from *Frantzis* that when Congress enacted the AMA, it removed the statutory provision requiring the same Board member who presides at a hearing to also render a decision on a claim.[103]

Our dissenting colleague argues that "*Gonzales* should resolve the majority's struggle to see the basis for a court imposing a procedure that Congress has not required and the Constitution does not mandate."[104] It is true that the Supreme Court in *Gonzales* found it to be "implicit in the Act and Regulations—viewed against our underlying concepts of procedural regularity and basic

---

[101] *Pinto* R. at 73.

[102] *Brack*, 37 Vet.App. at 176.

[103] *Frantzis*, 104 F.4th at 265.

[104] *Post* at 31 (citing *Gonzales v. United States*, 348 U.S. 407, 412 (1955)).

fair play—that a copy of the recommendation . . . be furnished [to] the registrant . . . and that he be afforded an opportunity to reply," but that determination was made in the face of statutory silence on the particular question at hand.[105] That is not the situation we face today.

It would be inappropriate to use the fair process doctrine to insert a requirement into the statutory procedural system that Congress expressly removed. That situation is nothing like the statutory silence the Supreme Court faced in *Gonzales.* Assume for a moment that, if instead of merely removing the requirement under the legacy system to have the same Board member render a decision on a claim as the one who had conducted a hearing, Congress had instead affirmatively said there was no such requirement. Under this assumption, it would be clear beyond a doubt that fair process could not change that result because the fair process doctrine "cannot supplant" statutes.[106] Using the doctrine to "reinsert" a procedural device Congress expressly removed would be the equivalent of supplanting Congress's statutes in all but name.

Our dissenting colleague also makes much of us following the Federal Circuit's lead in recognizing that the fair process doctrine is effectively due process. Even so, the dissent tells us that "'the Due Process Clause 'promises more than fair process.'"[107] To be sure, we would agree with the dissent (and the Supreme Court)—that the Due Process Clause offers greater protections than notions of fair process. But the problem is that we know that due process does not require what appellants and the dissent want—the Board member who held the hearing to also decide the case.[108] If such a right is not found under Due Process—which the dissent and Supreme Court say offers greater protections, it can't be found in the "lesser" fair process doctrine. So whether under the Supreme Court's *Muñoz* framing*, or* the Federal Circuit's *Frantzis* framing, the fair process doctrine doesn't help appellants here.

The dissent also questions whether we should rely on *Raddatz*, seemingly because of statutory or regulatory features from other administrative adjudication systems. But recall the Supreme Court's point in *Raddatz*: "Generally, the ultimate factfinder in administrative proceedings is a commission or board, and such trier has not heard the witnesses testify."[109] This

---

[105] *Gonzales*, 348 U.S. at 412.

[106] *Brack*, 37 Vet.App. at 176.

[107] *Post* at 30 (citing *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024)).

[108] *See Raddatz*, 447 U.S. at 680.

[109] *Id*.

20

conclusion about administrative agencies made in the context of deciding that the Due Process Clause tolerates a district court judge deciding a matter when only the magistrate saw the witness testify should not be cast aside when we face a very similar question.

It particularly should not be cast aside by invoking the APA or other statutory schemes for how they treat hearing officers; doing so only strengthens the point that the right to have a hearing officer and decision-maker be one and the same is not found in the Constitution but in statutes or regulations. Congress once gave such a right to veterans in the legacy system. Just because Congress decided in the APA to express a preference for having the hearing officer participate in the final decision,[110] does not mean that the Constitution requires the same of a Board member.[111] As with the APA, that is a choice for Congress to make. And it is a choice Congress made by changing section 7107(c).[112]

When it comes to the Constitution, just as before this change, veterans can have a hearing at the regional office level with a hearing officer.[113] And then on appeal, "[w]hile the . . . [B]oard . . . may defer to the findings of a hearing officer, that is not compelled."[114] The same is now true when the Board makes a final decision after holding its own hearing; the Board may defer to any findings made by a presiding Board member but, just as in other administrative law contexts, "that is not compelled" by the Constitution.[115] At minimum, it is not compelled in every case; we do not foreclose an as-applied challenge.

\* \* \*

In sum, no matter how one looks at appellants' challenge concerning the use of different Board members to conduct hearings and render decisions under the AMA, it is without merit. Neither Mr. Bilharz nor Mr. Pinto succeed in their appeals with respect to this argument. We proceed now to address the remaining issues in these consolidated appeals.

---

[110] 5 U.S.C. § 554(d).

[111] *Raddatz*, 447 U.S. at 680.

[112] *Frantzis*, 104 F.4th at 265.

[113] 38 C.F.R. § 3.103(d) (2025).

[114] *Raddatz*, at 447 U.S. at 680.

[115] *Id*.

B. *Bryant* Duties for Board Hearings Under the AMA

We turn now to another question of first impression: Do the duties of Board members at hearings that we recognized in *Bryant* under the legacy system apply to Board hearings under the AMA?[116] As we explain, the duties of Board members we acknowledged in *Bryant* continue to apply to AMA Board hearings, but the regulation that requires those duties has changed from the one on which we based our holding in *Bryant*. We first explore the law and then apply the relevant legal principles to Mr. Pinto's situation.

*1. The Law*

The question concerning whether the *Bryant* duties apply in the context of AMA Board hearings is one of regulatory interpretation, which is a question of law.[117] We first look to the text and structure of a regulation, which is the best indication of its plain meaning.[118] If the plain meaning of the regulation is clear on its face, then such plain meaning controls, and "that is 'the end of the matter.'"[119]

In 2010, when we decided *Bryant*, § 3.103(c)(2) imposed "two distinct duties" on Board members during Board hearings.[120] At that time, (c)(1) expressly made the regulation applicable to the Board. And (c)(2) required the hearing officer to, among other things, "'explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position.'"[121] These responsibilities colloquially became known as the *Bryant* duties.

We decided *Bryant* under the legacy appeals system. Several years after *Bryant*, "Congress enacted the AMA in 2017 to reform the existing VA administrative appeals system," and the AMA's "amendments reflect Congress's goal of streamlining the administrative appeals system while still protecting claimants' due process rights."[122]

---

[116] 23 Vet. App. 488.

[117] *See Foster v. McDonough*, 34 Vet.App. 338, 344-45 (2021); *see also Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc).

[118] *See Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017).

[119] *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)); *see also Kisor v. Wilkie*, 588 U.S. 558, 574 (2019).

[120] 23 Vet. App. at 492.

[121] *Id.* quoting 38 C.F.R. § 3.103(c)(2) (effective Aug. 23, 2011, to June 17, 2012).

[122] *Mil.-Veterans Advoc.*, 7 F.4th at 1118-19.

As we noted earlier, in the AMA system, claimants may now choose from three procedural lanes: (1) filing a supplemental claim with new and relevant evidence to seek readjudication of the claim based on all of the evidence of record; (2) filing a request for higher-level review of the AOJ decision; and (3) filing an notice of disagreement to directly appeal to the Board.[123] When a claimant selects the third option of a Board hearing, they are faced with another choice—which Board docket to select: direct review; evidence submission, or hearing. Mr. Pinto selected the hearing lane, which sets up the legal issue.

To implement the AMA, VA adopted a comprehensive set of regulations. As relevant here, first, the section we interpreted in *Bryant* (§ 3.103(c)) became § 3.103(d). But VA did not simply move the old regulation to a new place in the Code of Federal Regulations; it also amended its language. Section 3.103(d) now prescribes responsibilities in hearings only "*before* VA issues notice of a decision on an initial or supplemental claim."[124] A Board hearing occurs *after* VA has issued a notice of decision.[125] When we decided *Bryant*, § 3.103 was not limited to situations in which a hearing took place before the notice of a decision. So, that means that the regulatory language on which we based our decision in *Bryant* no longer exists. If that is all that happened when VA implemented the AMA, our work would be done. We would simply apply the new regulation. But there is more to this story.

At the same time VA amended § 3.103, it also adopted § 20.705, a regulation that describes the duties of Board members during a Board hearing.[126] Section 20.705 provides that "[t]he duties of the presiding Member include, but are not limited to, any of the following" and lists 10 explicit duties of Board members at a hearing.[127] In other words, the regulation enumerates specific duties but does so in a way that does not limit the duties of Board members to the specific duties that are set out in the regulation. As we will explain, § 20.705's nonexclusive discussion of a Board member's duties at an AMA hearing is critical to our resolution of the issue before us in this part of the appeal.

---

[123] *See* 38 U.S.C. §§ 5104C(a)(1)(A)-(C), 5104B, 5108, 7105; *Mil.-Veterans Advoc.*, 7 F.4th at 1117, 1119.

[124] 38 C.F.R. § 3.103(d)(1) (emphasis added).

[125] *See* 38 C.F.R. § 3.2400 (2025).

[126] *See* 38 C.F.R. §§ 3.103; 20.705 (2025).

[127] 38 C.F.R. § 20.705(b).

Before we continue with our discussion of § 20.705, a brief detour is instructive. As part of the rulemaking process, VA published a final rule in the Federal Register that included a response to significant comments about the proposed rule, as well as a justification for the final rule.[128] In the Secretary's Federal Register commentary, he expressly stated that the regulatory changes to § 3.103 and the adoption of § 20.705 were not intended to abrogate the *Bryant* duties.[129] The Secretary said: "These regulations do not and do not intend to limit the holding of *Bryant*. This regulation will assist in providing a focused, directed hearing which will be as assistive as possible to the veteran in substantiating the claim consistent with *Bryant*."[130] In other words, VA expressly stated that Board members conducting AMA hearings have the same obligation to assist claimants as Board members conducting legacy hearings had under *Bryant*.

This brings us back to the nonexhaustive list of responsibilities for Board members at hearings set out in § 20.705. Not to hide the ball, § 20.705 provides us with the means to resolve the conflict between the text of amended § 3.103 and the Secretary's explanation of the amendment in the Federal Register. To begin with, and to state the obvious, the nonexhaustive list of duties in the regulation means that there can be additional duties imposed on Board members presiding at hearings. Plus, the nonexhaustive list of hearing officer duties in § 20.705 itself includes language that speaks (at least generally) to the *Bryant* duties. This all allows us to essentially reconcile what the Secretary said VA was doing when it amended § 3.103 with the text of that regulation. In other words, we can conclude that the Secretary was entirely forthright in his Federal Register commentary because § 20.705 is broad enough to include the *Bryant* duties. If we didn't have § 20.705 with its nonexhaustive language, we would have to confront the difficult question of how to reconcile regulatory language with inconsistent rulemaking commentary under the APA. We leave that question for another day.

The Secretary's arguments made now that the *Bryant* duties no longer apply to Board hearings fall short of overcoming the plain meaning of § 20.705 and contradict the explicit statements VA made during the rulemaking proceedings when VA adopted regulations implementing the AMA. It would be fanciful for the Court to accept the Secretary's assertion in this appeal that Board members are exempt from the *Bryant* duties when VA has never made that

---

[128] VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 158 (Jan. 18, 2019).

[129] *Id.*

[130] *Id.*

24

argument before and, in fact, made exactly the opposite point when implementing the AMA regulatory changes. So, to repeat, we think that we can resolve the tension between the change to § 3.103 and the Secretary's comments in the Federal Register concerning the continued vitality of *Bryant* under the AMA via the nonexhaustive nature of the Board members' duties under § 20.705.

We could stop here because we think the nonexhaustive nature of § 20.705 is sufficient to resolve the difficulties associated with the change in language of § 3.103 in contrast to the Secretary's rulemaking commentary. Nevertheless, as we alluded to earlier, we note that there are express duties in § 20.705 that speak to the *Bryant* duties, at least in general terms. For example, § 20.705(b)(4) charges the presiding Board member with "[e]nsuring that the course of the Board hearing remains relevant to the issue or issues on appeal." [131] This fits the *Bryant* duties of explaining the issues if the veteran is offering irrelevant testimony or simply not offering the relevant testimony needed to resolve an issue. Further, § 20.705(b)(7) requires a Board member to "[d]etermin[e] whether documentary evidence, testimony, and/or argument is relevant or material to the issue or issues being considered and not unduly repetitious."[132] This is substantively similar to the duty to suggest the submission of evidence that the claimant may have overlooked, and which would be advantageous to the claimant's position. So, several of the express duties under § 20.705 support the Secretary's commentary in the rulemaking process concerning *Bryant*'s continued viability under the AMA. To be clear, if all we had were these express duties and the regulation purported to be an exhaustive list of duties, we might reach a different result. But the nonexhaustive nature of the duties coupled with the Secretary's Federal Register comments put the express duties in a different light.

To sum up, when a ship is moored at a dock and the rope that tethers the ship to the dock is moved to a different mooring, it does not mean that the ship is no longer docked. It's just held in place by something different. So too here with respect to the *Bryant* duties. We tethered those duties to § 3.103 under the legacy system. The mooring has now moved to § 20.705 under the AMA. But just as our metaphorical ship remains tethered to the dock, Board members must continue to comply with the *Bryant* duties when conducting AMA hearings. We now turn to

---

[131] 38 C.F.R. § 20.705(b)(4).

[132] 38 C.F.R. § 20.705(b)(7).

25

whether the Board member who conducted Mr. Pinto's hearing complied with the newly tethered *Bryant* duties.

### 2. Application of Bryant *Under § 20.705 to Mr. Pinto's Hearing*

Understanding that the *Bryant* duties still apply to Board hearings under the AMA, we turn now to analyze the Board's failure to satisfy those duties during Mr. Pinto's Board hearing. In its December 6, 2023 decision, the Board noted "that there is very little relevant medical evidence of record."[133] The Board continued by observing that appellant had not provided evidence of his counseling sessions relevant to his PTSD and TDIU claims.[134] In that regard, the Board stated: "Even though Dr. J.V.P. indicated that they have met with the [v]eteran for 12 counseling sessions, no further information regarding those session[s] or treatment records associated with those sessions have been provided."[135] The Board further noted that appellant had not provided evidence or testimony to support his claims for an initial disability rating above 30% for PTSD or his entitlement to TDIU.[136]

Despite the repeated references in its decision about Mr. Pinto's failure to provide evidence to support his claims, during Mr. Pinto's Board hearing, the Board member did nothing to suggest to him that such evidence could be advantageous to his claim. In fact, during Mr. Pinto's Board hearing, the Board member largely sat silently as the agent representing Mr. Pinto led him through a series of questions concerning his psychiatric symptoms.[137] The Board member did not mention the requirements to satisfy a PTSD evaluation higher than 30%, nor did the Board member suggest the submission of evidence that Mr. Pinto may have overlooked and that could have been to his advantage to submit in support of his claim. And as to entitlement to TDIU, the presiding Board member did little beyond making a passing mention that perhaps the Board should also consider TDIU.[138] The Board member's conduct at the hearing is wholly insufficient under the *Bryant* duties that we have explained remain applicable to Board AMA hearings.

---

[133] *Pinto* R. at 9.

[134] *Id*. at 11.

[135] *Id*.

[136] *Id.* at 12.

[137] *Id*. at 59-74.

[138] *Id*. at 71-72.

26

In sum, as we have made clear, the Board is bound by the duties established in *Bryant* at Board hearings under the AMA. The Board failed to fulfill those duties here. Accordingly, we will set aside the Board's decision concerning Mr. Pinto's claims and remand those matters so the Board may provide Mr. Pinto with a hearing that complies with *Bryant*.

C. The Board provided inadequate reasons or bases for denying Mr. Bilharz's claims.

We return now to Mr. Bilharz. Recall that earlier we rejected his argument about the Board member deciding his appeal being different from the one who presided over his Board hearing. Unless there is some other error, we would be forced to affirm the Board's decision concerning his claims. Fortunately for Mr. Bilharz, we agree with an alternative he presents. Specifically, we agree with him that the Board did not support its decision with an adequate statement of reasons or bases.

Establishing service connection generally requires evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability.[139] For chronic diseases, service connection may be established by showing continuity of symptomatology, which requires a claimant to demonstrate (1) that a condition was "noted during service"; (2) evidence of postservice continuity of symptoms; and (3) medical or, in certain circumstances, lay evidence of a link between the present disability and the postservice continuity of symptoms.[140] The Court reviews the Board's findings regarding service connection for clear error.[141]

For all its findings on material issues of fact and law, the Board must support its decision with an adequate statement of reasons or bases that "enable[s] a claimant to understand the precise basis for the Board's decision" and "facilitate[s] review in this Court."[142] To comply with its requirement to provide an adequate statement of reasons or bases, "the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or

---

[139] *See Hickson v. West*, 12 Vet.App. 247, 253 (1999); *see also Davidson v. Shinseki*, 581 F.3d 1313, 1316 (Fed. Cir. 2009).

[140] 38 C.F.R. § 3.303(b); *see Walker v. Shinseki*, 708 F.3d 1331, 1340 (Fed. Cir. 2013).

[141] 38 U.S.C. § 7261(a)(4); *Dyment v. West*, 13 Vet.App. 141, 144 (1999), *aff'd sub nom. Dyment v. Principi*, 287 F.3d 1377 (Fed. Cir. 2002).

[142] *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *see* 38 U.S.C. § 7104(d)(1); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990).

unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant."[143] If the Board fails to do so, remand is appropriate.[144]

Mr. Bilharz argues, in part, that the Board failed to adequately "articulate [its] understanding of the facts to permit judicial review of potential errors and instead simply dismissed Mr. Bilharz's testimony as incompetent."[145] The Secretary defends the Board decision in full and urges affirmance. We find appellant's argument compelling.

In its July decision, the Board provided five brief dismissals of Mr. Bilharz's testimony as "not competent to provide a nexus opinion in this case"[146] or as based on knowledge "outside the realm of common knowledge of a lay person."[147] For example, when discussing appellant's bilateral hip disabilities the Board stated:

> To the extent that the [v]eteran believes his claimed bilateral hip disabilities are due to service, he is not competent to provide a nexus opinion in this case. The issue is medically complex, as it requires knowledge of the interaction between multiple organ systems in the body.[148]

The Board took essentially the same position for all the claims at issue in its decision.[149]

While the Board is correct that appellant is not competent to testify as to medically complex interactions of multiple organ systems, he is competent to testify to his in-service incurrence or aggravation, or his continuity of symptomatology for his chronic claims.[150] But the Board did not address this—instead, it solely relied on terse conclusory statements to dismiss appellant's lay statements. Further, the Board did not make a clear credibility determination about Mr. Bilharz's testimony.[151] Instead, it merely dismissed his statements as being unable to establish a nexus

---

[143] *Kahana v. Shinseki*, 24 Vet.App. 428, 433 (2011); *Gilbert*, 1 Vet.App. at 57.

[144] *Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

[145] Appellant's Br. at 14.

[146] *Bilharz* R. at 10, 11, 13, 14, 18.

[147] *Id.* at 18.

[148] *Id.* at 14-15 (citing *Jandreau v. Nicholson*, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007).

[149] *Id*. at 10, 11, 13, 14, 18.

[150] *See Hickson*, 12 Vet.App. at 253; *Davidson*, 581 F.3d at 1316; *see also Walker*, 708 F.3d at 1340.

[151] *Kahana*, 24 Vet.App. at 433; *Gilbert*, 1 Vet.App. at 57.

between his disabilities and his service.[152] The Board's failure here frustrates judicial review and should be addressed on remand.[153]

Because the Court is remanding the Board's decision for readjudication, it won't address appellant's other arguments now as they would result in no greater remedy than a remand.[154] Appellant can present any remaining arguments to the Board on remand.

### III. CONCLUSION

Based on the foregoing, we SET ASIDE the Board's decisions dated December 6, 2023, concerning Mr. Pinto and July 5, 2022, concerning Mr. Bilharz and REMAND both matters for further proceedings consistent with this opinion.

JAQUITH, *Judge*, concurring in part and dissenting in part. "The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). From the early days of the Court's existence, that principle of fairness has been an article of faith fueling Court action in the special context of veterans claims. *See Thurber v. Brown*, 5 Vet.App. 119, 124 (1993). I dissent from the majority's failure to require either due process or fair process here, and from the majority imperiling the fairness foundation of the pro-veteran adjudicative system that Congress created. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 440-41 (2011). However, I agree that *Bryant*'s prescribed duties of Board members who hold hearings continue to apply, as VA promised they would, and that the Board member who conducted Mr. Pinto's hearing did not fulfill *Bryant*'s requirements. *See Bryant v. Shinseki*, 23 Vet.App. 488, 496-97 (2010). And I agree that the Board member who decided Mr. Bilharz's case failed to provide an adequate statement of reasons or bases for denying his claims. So I agree that the Board decisions that the veterans have appealed should be set aside and the matters should be remanded.

---

[152] *Stefl v. Nicholson*, 21 Vet.App. 120, 123 (2007).

[153] *Kay v. Principi*, 16 Vet.App. 529, 532-33 (2002) (requiring remand, rather than reversal, where the Board fails to provide an adequate statement of reasons or bases or where "'an inadequate record frustrates judicial review'" (quoting *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994))).

[154] *See Best v. Principi*, 15 Vet.App. 18, 19-20 (2001) (per curiam order) (stating that a narrow decision preserves for appellant a chance to argue those claimed errors before the Board on readjudication).

29

## I. DUE PROCESS/FAIR PROCESS

"Due process of law is the primary and indispensable foundation of individual freedom. It is the basic and essential term in the social compact which defines the rights of the individual and delimits the powers which the state may exercise." *Application of Gault*, 387 U.S. 1, 20 (1967). The principle of fairness is implicit in due process. *See*, *e.g.*, *Milliken v. Meyer*, 311 U.S. 457, 463 (1940); *Int'l Dark-Sky Ass'n, Inc. v. Fed. Commc'n Comm'n*, 106 F.4th 1206, 1215 (D.C. Cir. 2024); *Home Box Off., Inc. v. Fed. Commc'n Comm'n.*, 567 F.2d 9, 56 (D.C. Cir. 1977), *cert. denied*, 434 U.S. 829 (1977); *Wright v. Arkansas Activities Ass'n (AAA)*, 501 F.2d 25, 28 (8th Cir. 1974). After all, the very essence of the due process requirement is that it ensures fairness and the orderly administration of the law. *See*, *e.g.*, *Fuld v. Palestine Liberation Org.*, 145 S. Ct. 2090, 2103 (2025). Due process requires fundamental fairness. *Lassiter v. Dep't of Soc. Servs. of Durham Cnty.*, *N.C.*, 452 U.S. 18, 24 (1981). For example, fair notice is an essential aspect of the due process that is required by "ordinary notions of fair play." *Sessions v. Dimaya*, 584 U.S. 148, 155 (2018) (internal citation omitted). So we can say with complete confidence that veterans are due fair process in the adjudication of their claims for benefits, as our Court has held many times before. *See*, *e.g.*, *Davis v. McDonough*, 36 Vet.App. 142, 155 (2023) (holding that under the AMA, "[t]he Board is obligated to provide fair process to appellants in the adjudication of their claims"); *Bryant v. Wilkie*, 33 Vet.App. 43, 46 (2020) ("Appellants have a right to fair process in the development and adjudication of their claims and appeals before VA."); *Nohr v. McDonald*, 27 Vet.App. 124, 134 n.5 (2014) ("[I]t is well-established that the Board must ensure that it provides an appellant fair process in the adjudication of his [or her] claim.").

Due process and fair process are closely related and often intertwined. *See Doe v. Univ. of Scis.*, 961 F.3d 203, 212 (3d Cir. 2020) ("'[F]air process' 'is a term of art used to describe a "judicial or administrative hearing conducted in accordance with due process."'") (quoting *Wojchowski v. Daines*, 498 F.3d 99, 102 n.5 (2d Cir. 2007)); *United States v. Drake*, 310 F. Supp. 3d 607, 635 (M.D.N.C. 2018) ("Intertwined with the guarantee of due process is a requirement of 'fundamental fairness.'") (citing *Lassiter*, 452 U.S. at 24-25)). Indeed, "[t]he minimum requirements of fair process . . . are defined by the Due Process Clause." *Black v. Romano*, 471 U.S. 606, 623 n.21 (1985). But due process and fair process are not quite coextensive, as the Supreme Court has made clear. First, the Due Process Clause "promises more than fair process: It also 'provides heightened protection against government interference with certain fundamental rights and liberty

30

interests.'" [155] *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). Second, the Supreme Court finds fair process requirements implicit in statutes and regulations "viewed against our underlying concepts of procedural regularity and basic fair play." *Gonzales v. United States*, 348 U.S. 407, 412 (1955). *Gonzales* should resolve the majority's struggle to see the basis for a court imposing a procedure that Congress has not required and the Constitution does not mandate. *Ante* at 12-13. In *Gonzales*, the Supreme Court considered the case of a claimant for conscientious objector classification who did not receive a copy of the Department of Justice's recommendation to the [Selective Service] Appeal Board because the applicable statute and regulation said nothing about providing one. *Gonzales*, 348 U.S. at 411-12. The Supreme Court nonetheless found it to be "implicit in the [Universal Military Training and Service] Act and Regulations—viewed against our underlying concepts of procedural regularity and basic fair play—that a copy of the recommendation . . . be furnished the registrant . . . and that he be afforded an opportunity to reply." *Id.* at 412. The Court emphasized that "[j]ust as the right to a hearing means the right to a meaningful hearing, . . . so the right to file a statement before the Appeal Board includes the right to file a meaningful statement, one based on all the facts in the file and made with awareness of the recommendations and arguments to be countered." *Id.* at 415. The Court characterized these rights as "prime requirement[s] of any fair hearing" that were not sufficiently protected by provision for a potential rehearing. *Id.* at 416-17.

Our Court first explicitly recognized veterans' right to fair process in *Austin v. Brown*, 6 Vet.App. 547, 551 (1994). Holding "that basic fair play requires that evidence be procured by the agency in an impartial, unbiased, and neutral manner," the *Austin* Court embraced the fair process principle the Court implicitly relied on in *Thurber* the preceding year and seconded *Thurber*'s reliance on the Supreme Court's invocation of implicit "underlying concepts of procedural

---

[155] The truth of *Muñoz* leads the majority to retreat from its contention that due process and fair process are coextensive, *ante* at 13, and belatedly endorse the notion that due process provides broader protection. The problem is that the broader protection comes from *substantive* due process, covering substantive fundamental rights and liberties, such as the right to marry. *Muñoz*, 602 U.S. at 910. What the majority denies Mr. Bilharz and Mr. Pinto is *procedural* due process, shortening the reach of the Constitution and then also denying veterans the fair process deeply rooted in the nature of the veterans benefits system, which the majority views as a lesser imperative—or as nothing at all. Our Court is among those that sometimes characterize due process in terms of fair adjudicative process. *See, e.g.*, *Sapp v. Wilkie*, 32 Vet.App. 125, 138-39 (2019); *infra* at 32. Moreover, as this partial dissent highlights, we have a lot of compelling precedent following the Supreme Court in finding broader protection in a systemic fair process requirement that reflects the balancing of the nearly unitary government and private interest in justice for veterans and their families.

31

regularity and basic fair play" in *Gonzales*. *Austin*, 6 Vet.App. at 551-52 (citing *Thurber*, 5 Vet.App. at 123, and quoting *Gonzales*, 348 U.S. at 412).

Ours was not the only court to follow the Supreme Court's lead. *See Rohe v. Froehlke*, 500 F.2d 113, 116 n.3 (2d Cir. 1974) ("Appellant does not claim, and we do not hold, that the regulation violates due process. We merely hold, as did the Supreme Court in *Gonzales*, that the right to respond to adverse allegations is implicit in a regulation granting a right to appeal.")[156]; *Hoffmann-La Roche, Inc. v. Kleindienst*, 464 F.2d 1068, 1073 (3d Cir. 1972) (relying on *Gonzales* to order Department of Justice officials to provide the petitioner with an advisory committee report recommending that Librium and Valium be listed as depressant drugs having a potential for abuse); *Crotty v. Kelly*, 443 F.2d 214, 217 (1st Cir. 1971) (interpreting *Gonzales*'s reliance on "underlying concepts of procedural regularity and basic fair play," 348 U.S. at 412, as a source of due process requirements); *United States v. Thompson*, 431 F.2d 1265, 1271-72 (3d Cir. 1970) (collecting cases "[a]pplying the principles of the *Gonzales* decision" and finding prejudicial denial of procedural fairness in the Selective Service board seeking clarification regarding Mr. Thompson's financial situation only from his estranged wife); *United States v. Cabbage*, 430 F.2d 1037, 1041 (6th Cir. 1970) (relying on *Gonzales* to find that the appellant was denied the fair hearing required by the Due Process Clause). In *Rock River Health Care, LLC v. Eagleson*, the Seventh Circuit said it had parroted *Gonzales*'s holding—discerning and defining the requirements of a fair and just process—in numerous other cases and applied it to the case at bar. 14 F.4th 768, 779 (7th Cir. 2021). Moreover, in *McGarva v. United States*, the Supreme Court reaffirmed its reliance on "'underlying concepts of procedural regularity and basic fair play,'" quoting *Gonzales*, 348 U.S. at 417, in finding that another petitioner was deprived of his fundamental right to a fair hearing when an appeal board kept adverse information from him. 406 U.S. 953, 954 (1972).

Since *Thurber* and *Austin*, precedential decisions of this Court have repeatedly relied on *Gonzales* in determining what process "is implicitly required when 'viewed against [the] underlying concepts of procedural regularity and basic fair play' of the VA benefits adjudicatory system." *Smith v. Wilkie*, 32 Vet.App. 332, 337 (2020) (quoting *Thurber*, 5 Vet.App. at 123, and

---

[156] In *Poor Thunder v. United States*, the Eighth Circuit similarly said: "We do not hold that [Rule 32 of the Federal Rules of Criminal Procedure] in its every detail is required by the Due Process Clause of the Constitution. But it is designed to safeguard the right, held to be contained in that Clause . . . that defendants . . . not be sentenced on the basis of any facts until a fair process for determining accuracy has been made available." 810 F.2d 817, 822 (8th Cir. 1987).

citing *Gonzales*, 348 U.S. at 412); *see, e.g.*, *Bryant*, 33 Vet.App. at 48 (holding that "[b]y prematurely deciding the appeal without the benefit of the argument that the Board knew was forthcoming," the Board denied the veteran fair process); *Smith*, 32 Vet.App. at 338 ("[F]air process requires notice and an opportunity to respond when the Board . . . purports to reverse its prior characterization . . . that evidence is credible or otherwise satisfactory to establish a fact necessary to establish entitlement to VA compensation benefits."); *Daves v. Nicholson*, 21 Vet.App. 46, 52 (2007) ("[T]he Secretary [must] notify the claimant prior to the adjudication of the claim of the Secretary's inability to obtain evidence that the Secretary has undertaken to obtain, so that the claimant has a fair and reasonable opportunity to try and secure it or procure alternative evidence at a time when such information will be most useful to the adjudicator."); *Prickett v. Nicholson*, 20 Vet.App. 370, 380 (2006) (finding no violation of fair process), *aff'd sub nom. Prickett v. Mansfield*, 257 Fed. Appx. 288 (Fed. Cir. 2007) (unpublished); *Haney v. Nicholson*, 20 Vet.App. 301, 306 (2006) (holding that when a Board member at a hearing leaves the record open for the appellant to submit evidence, "fair process requires the Board to subsequently set a deadline by which the record will close and notify the appellant of that deadline before the claim can be adjudicated"); *Svehla v. Principi*, 17 Vet.App. 160, 165 (2003) (holding that the Board failed to provide notice to the duly authorized representative of a veteran with a 100% disabling mental condition and thus erred in determining that the veteran received adequate notice of the decision concerning his VA benefits and his right of election of benefits and the consequences thereof); *Colayong v. West*, 12 Vet.App. 524, 534-35 (1999) (holding that VA's solicitation of a medical opinion from an orthopedic specialist suggesting that the specialist refute a private physician's report was improper and compromised the fairness of the adjudication process).

The Federal Circuit has acknowledged that this Court's consideration of whether veterans are afforded fair process is premised on *Gonzales*, where "the Supreme Court held that despite silence in the applicable statute and regulations as to a particular procedural requirement, the requirement was implicit in the statute and regulations when 'viewed against our underlying concepts of procedural regularity and basic fair play.'" *Sprinkle v. Shinseki*, 733 F.3d 1180, 1185 (Fed. Cir. 2013) (affirming that the veteran was not denied fair process because he received an SSOC reflecting the substance of a medical report, and then the report itself, and he told VA that he had no additional evidence to submit and requested that VA immediately return his appeal to the Board).

33

The majority dismisses *Gonzales* by reprising the statutory argument that won the day in *Frantzis*—38 U.S.C. § 7107(c) was repurposed without including the requirement that "formal recorded hearings shall be held by such member or members of the Board as the Chairman may designate[ and s]uch member or members designated by the Chairman to conduct the hearing shall . . . participate in making the final determination of the claim." 38 U.S.C. § 7107(c) (2016); *see Frantzis v. McDonough*, 35 Vet.App. 354, 362-63, *aff'd*, 104 F.4th 262, 265 (Fed. Cir. 2024). "[A] repealed statute is considered never to have existed." 1A Shambie Singer, SUTHERLAND STATUTORY CONSTRUCTION § 23:31 (8th ed. 2025). But the majority says the statute speaks from beyond the grave, vaporizes *Gonzales*, and grants VA unfettered power to do as it pleases and substitute decision-makers for any or no reason, unless perhaps the Board member who conducted the hearing explicitly found the veteran credible and the substitute reverses that finding. *See ante* at 18-20. The majority gets it partly right: The repurposing means that Court cannot categorically require that the Board member who conducts the hearing must always decide the case. That would be impossible, for Board members move on to other positions, retire, and pass away. And we have a nationwide federal court system that permits substitution "[i]f a judge conducting a hearing or trial is unable to proceed," and another judge can certify familiarity with the record, determine that the case may be completed without prejudice to the parties, and, upon request, recall important witnesses. FED. R. CIV. P. 63. But the voice for VA's unfettered power is the majority's alone— Congress has not spoken to Board member assignments beyond its preexisting statute providing that "[a] proceeding instituted before the Board may be assigned to an individual member of the Board or to a panel of not less than three members of the Board[ and a] member or panel assigned a proceeding shall make a determination thereon."[157] 38 U.S.C. § 7102(a) (effective Dec. 27, 2022). That statute apparently does not impose a "same Board member requirement." *Frantzis*, 104 F.4th at 265. But section 7102 certainly aligns with "underlying concepts of procedural regularity and basic fair play," *Gonzales*, 348 U.S. at 412, which do apply, at the very least in the two cases before the Court today. Most importantly, Congress did not, in repurposing section 7107(c), repeal the "singular[, pro-veteran] characteristics of the review scheme that [it] created for the adjudication of veterans' benefits claims." *Henderson*, 562 U.S. at 440. It remains true that

---

[157] In the same silence as its repurposing of section 7107(c), Congress repurposed section 7107(b), omitting the following sentence: "The Board shall decide any appeal only after affording the appellant an opportunity for a hearing." 38 U.S.C. § 7107(b) (2016). The Secretary contends that the veteran now has no right to a Board hearing. Secretary's Supp. Br. at 4. The majority's position on that point is unclear.

34

"fair process requires the Board to provide a claimant with notice and the opportunity to respond to legal authority and evidence that may be relied on to deny a claim." *Lorio v. Collins*, 38 Vet.App. 120, 128 (2025) (noting that "[t]he Board acknowledged that Ms. Lorio was entitled to fair process . . . and concluded that it provided her with that fair process," but had not done so).

In sum, there is no mystery regarding the Court's basis for requiring fair process and no reasonable question that a fairness requirement is implicit in the concepts of procedural regularity and basic fair play undeniably underlying the VA benefits adjudicatory system. "[The Federal Circuit] and the Supreme Court both have long recognized that the character of the veterans' benefits statutes is strongly and uniquely pro-claimant." *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998). And "the paternalistic attributes of the veterans' benefits system . . . militate toward providing more protection for veterans, not less." *Gambill v. Shinseki*, 576 F.3d 1307, 1324 (Fed. Cir. 2009) (Moore, J., concurring). In enacting the AMA, Congress embraced fair process as a pillar of appeals modernization, saying that the AMA was designed, in part, to "streamline VA's appeal process" and "help ensure that the process is both timely and fair." H. Rep. No. 115-135 at 5 (2017). In another case, the Secretary specifically acknowledged "'that claimants have a general right to fair process in the development and adjudication of their claims and appeals before VA, including under the modernized system.'" *Brack v. McDonough*, 37 Vet.App. 172, 182 (2024) (Jaquith, J., concurring) (quoting Secretary's Supp. Br. at 4). And this Court has held, in an AMA case, that "[t]he Board is obligated to provide fair process to appellants in the adjudication of their claims." *Davis*, 36 Vet.App. at 155.

## II. *MATHEWS* BALANCING

In my view, the majority's assessment of the competing interests at issue misses the mark. We should begin as *Thurber* did (5 Vet.App. at 122), with the Supreme Court's instruction that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). From that touchstone, *Mathews* continues: "'Due process is flexible and calls for such procedural protections as the particular situation demands.'" *Mathews*, 424 U.S. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The particular situation here is a system for adjudicating veterans benefits claims that is "strongly and uniquely pro-claimant," *Hodge*, 155 F.3d at 1362, and dramatically more protective of veterans' rights than the

35

construct for ordinary civil litigation. *Henderson*, 562 U.S. at 440. "[V]eterans risked both life and liberty in their military service to this country[, so t]he veterans benefits scheme is . . . 'imbued with special beneficence from a grateful sovereign.'" *Sneed v. Shinseki*, 737 F.3d 719, 728 (Fed. Cir. 2013) (quoting *Bailey v. West*, 160 F.3d 1360, 1370 (Fed. Cir. 1998) (Michel, J., concurring)).

The gratitude and solicitude due veterans, and especially those whose service has resulted in or aggravated functional impairment—recognized by Congress and the Supreme Court—should affect our discernment of the dictates of due process through consideration of the *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. The principal effect is to change the order to reflect, up front, that "[t]he government's interest in veterans cases is not that it shall win, but rather that justice shall be done, that all veterans so entitled receive the benefits due to them." *Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006). Nonetheless, the Secretary elevates a practical problem—the administrative burden to compel Board members who conduct hearings to decide the cases they hear "despite conflicts, illnesses, or other obstacles that might arise." Secretary's Supp. Br. at 10-11.[158] It is self-evident that conflicts, illnesses, and similar issues give rise to an administrative burden greater than when all scheduled work proceeds as planned. But it is absurd to conclude—in the absence of evidentiary support—that having Board members who conduct hearings decide the cases they hear gives rise to a significantly greater burden than substituting Board members who have not prepared for or conducted the hearing in the case, and, thus, have the onus of a ton of duplicative work to do to get ready. In these consolidated cases, the records of proceedings are numbered to 2,692 pages in Mr. Bilharz's case and 465 pages in Mr. Pinto's. So the actual records are at least

---

[158] The majority notes that the Secretary also contends that "requiring the same Board member to decide an appeal after conducting a hearing would . . . lead[] to . . . inconsistencies in the timing of case resolution." *Ante* at 8. That is a liberal construction of the Secretary's arguments, which do not mention inconsistencies, and inconsistent with the truth: Having one Board member hear a case and another Board member decide it leads to far greater delay—unless the substitute is sent with an instructed outcome so attention to the laboriously assembled record is unnecessary. It also leads to inconsistent, unreliable results because the decision-maker does not have the same opportunity as the hearing officer to assess the credibility and reliability of witnesses and ask follow-up questions. The majority also notes that the veteran can request another hearing, but there is no notice of any such right. To the contrary—the notice provided tells the veteran: "You cannot request two Board Appeals in a row." *Bilharz* R. at 20; *Pinto* R. at 21.

that long and likely much longer. Then there's researching the statutes, regulations, internal guidance, and other matters of law and policy that are at issue. That is a lot of reading and study, and it's work that the Board member who held the hearing has already done to fulfill VA's commitment to *Bryant*'s description of a hearing officer's duties: "[F]ully explain the issues still outstanding that are relevant and material to substantiating the claim" and "suggest that a claimant submit evidence on an issue material to substantiating the claim when the record is missing any evidence on that issue or when the testimony at the hearing raises an issue for which there is no evidence in the record." *Bryant*, 23 Vet.App. at 496. The Board member who held the hearing has become "familiar with the claims file," reviewed the record in preparation for the hearing to "focus on the issues that remain outstanding, and whether evidence has been gathered as to those issues," and been fully "engaged in the hearing process." *Id.* That extraordinary amount of additional time and energy that the substitute Board member must expend to catch up, duplicating work that was already done by someone else, is the double drain on agency resources to be avoided. The administrative burden of rescheduling generally pales by comparison. The workplace idiom is "pull your own weight," even for Board members and judges.

VA has already taken one very significant step to lighten the administrative load—regularly and in response to unexpected circumstances—by conducting most hearings remotely, as now provided for by section 7107(c). And VA could take another one by promulgating a rule with constitutionally permissible standards for substitution, like Rule 63 of the Federal Rules of Civil Procedure.

The private interest that is affected is a compelling one involving the health and welfare of veterans. "[T]here is no dispute that the private interest—compensation of disabled veterans—is vital." *Gambill*, 576 F.3d at 1330 (Fed. Cir. 2009) (Moore, J., concurring). We weigh it mindful that caring for veterans and their families is a core value of our Nation and a payment of our indebtedness to those who served, suffered, and sacrificed so that due process would be preserved. *See Noah v. McDonald*, 28 Vet.App. 120, 130 (2016).

The risk of erroneous deprivation of veterans benefits is exponentially greater when the veteran does not face the decision-maker. In conducting hearings and deciding veterans' cases, the Board "functions as a factfinder in a manner similar to that of a trial court." *Cook v. Snyder*, 28 Vet.App. 330, 336 (2017), *aff'd*, *Cook v. Wilkie*, 908 F.3d 813 (2018); *see, e.g.*, *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013) ("[T]he evaluation and weighing of evidence are

37

factual determinations committed to the discretion of the factfinder."); *Gilbert v. Derwinski*, 1 Vet. App. 49, 52 (1990). So "the opportunity for a personal hearing before the Board is significant because it is the veteran's one opportunity to personally address those who will find facts, make credibility determinations, and ultimately render the final Agency decision on his [or her] claim." *Arneson v. Shinseki*, 24 Vet.App. 379, 382 (2011). The Board hearing is uniquely important because it gives the veteran the ability to address and respond to any specific questions by the decision-maker and enables the Board member to size the veteran up—to assess the witness's demeanor, facial expressions, eye contact, voice tone and inflection, gestures, and hesitation or readiness to answer questions—all the nonverbal cues that help a listener decide whether a speaker is credible. *See Quinn v. Wilkie*, 31 Vet.App. 284, 292 (2019). "[T]he unique benefits" of a Board hearing include the "important[] point that an adjudicator would be able to observe the demeanor of a veteran at a hearing, which reading a written submission would not allow." *Id.* And the hearing provides the veteran the unique opportunity to address and respond to any specific questions by that adjudicator relating to the evidence and testimony the veteran provides. *Id.* As Supreme Court Chief Justice Charles Evans Hughes said in 1936, "[t]he one who decides must hear." *Morgan v. United States*, 298 U.S. 468, 481 (1936). Over 50 years later, a former Board Chairman testified: "It is always better in any case to have a personal hearing before the people who are deciding." *Cook*, 28 Vet.App. at 337.

The Board must consider a veteran's testimony in determining whether a disability is service connected. *Waters v. Shinseki*, 601 F.3d 1274, 1278 (Fed. Cir. 2010). A veteran's testimony regarding symptoms can be pivotal evidence of a disability and, in some circumstances, its origin. *See Jandreau v. Nicholson*, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). The Board must account for the circumstances surrounding a veteran's statements to make an adequate credibility determination. *Arline v. McDonough*, 34 Vet.App. 238, 257 (2021). And the credibility of a testifying witness is always at issue. *United States v. Repak*, 852 F.3d 230, 250 (3d Cir. 2017); *United States v. Adams*, 870 F.2d 1140, 1147 (6th Cir. 1989). In assessing credibility, "written submissions are a particularly inappropriate way to distinguish a genuine hard luck story from a fabricated tall tale." *Califano v. Yamasaki*, 442 U.S. 682, 697 (1979). And the importance of testimony in making reliable judgments is particularly high in veterans benefits cases. Our armed forces serve all over the world, including in austere and violent environments, and receive medical care for injuries and diseases in the field. There are still many World War II veterans receiving

VA benefits. DEP'T OF VA, *World War II Veterans*, https://www.benefits.va.gov/persona/veteran-world_war_II.asp (last visited Aug. 1, 2025). It is often difficult for VA to obtain military records, including those involving medical care, particularly for service in the National Guard and Reserve (which accounted for 43% of Global War on Terror veterans). *See* U.S. GOV'T ACCOUNTABILITY OFF., GAO-13-453T, Veterans' Disability Benefits: Challenges to Timely Processing Persist (Mar. 13, 2013), https://www.gao.gov/products/gao-13-453t. There are 45 U.S. military hospitals/inpatient facilities and 572 military ambulatory care and occupational health centers worldwide. Health.mil, The Official Website of the Military Health System, MHS Health Facilities (Sept. 23, 2024), https://www.health.mil/News/Media-Resources/Media-Center/MHS-Health-Facilities. VA's electronic health record modernization project has experienced hundreds of major performance incidents since VA awarded a contract to implement a new system in 2018. *See* DEP'T OF VA, OIG, VA Needs to Strengthen Controls to Address Electronic Health Record System Major Performance Incidents, Audit 22-03591-231 (Sept. 23, 2024), https://www.vaoig.gov/reports/audit/va-needs-strengthen-controls-address-electronic-health-record-system-major. The Department of Defense has also deployed a new system beset by challenges. *See* U.S. GOV'T ACCOUNTABILITY OFF., GAO-24-106187, Electronic Health Records: DOD Has Deployed New System but Challenges Remain (Apr. 18, 2024), https://www.gao.gov/products/gao-24-106187. So personal testimony remains very important. VA acknowledged as much when, in promulgating AMA regulations, it "strongly disagree[d]" with a suggestion "that VA should consider the efficiencies to the adjudication process of [the] submission of recordings in lieu of formal hearings," rejecting that suggestion by asserting that "[a]ny such efficiencies are greatly outweighed by the benefits of an in-person hearing, the purpose of which is to elicit relevant and material testimony, assess the credibility of witnesses, resolve disputed issues of fact, and pose follow-up questions to witnesses and representatives." *VA Claims and Appeals Modernization*, 84 Fed. Reg. 138, 158 (Jan. 18, 2019) (codified at 38 C.F.R. pts. 3, 8, 14, 19, 20, and 21).

As already noted, the Secretary could do much more to address the administrative burden he alleges without depriving veterans of their due process right to a hearing before their decision-maker—a rule like Rule 63 of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 63. Notably, the Board members who conducted the hearings for Mr. Bilharz and Mr. Pinto were still Board members when the Board decisions on appeal were issued for each veteran and continued

to serve as Board members, as of the Board's annual report for fiscal year 2024. Bᴅ. ᴏꜰ Vᴇᴛᴇʀᴀɴꜱ' Aᴘᴘᴇᴀʟꜱ, U.S. Dᴇᴘ'ᴛ ᴏꜰ Vᴇᴛᴇʀᴀɴꜱ Aꜰꜰꜱ. Aɴɴ. Rᴇᴘ. 5, https://department.va.gov/board-of-veterans-appeals/wp-content/uploads/sites/19/2025/04/2024 _bva2024ar.pdf. And the consequences of the substitutions speak for themselves—proceedings rife with errors that require yet more proceedings to get to procedural due process and reliable results. The loss of an informed decision-maker to whom the veteran has personally pled his or her case is too big a burden for the veteran, the Agency, and the public to bear for there to be confidence that the outcome is a fair one.

In the nearly half-century since *Mathews* was decided, over three decades of this Court's caselaw has addressed, expressed, and defined the fair process due veterans seeking the benefits to which their service, suffering, and sacrifice entitle them. *See*, *e.g.*, *Brack*, 37 Vet.App. at 175-81 (holding that fair process principles did not add a specific submission period to the AMA's direct review lane); *Id.* at 182-85 (Jaquith, J., concurring in the judgment) (noting the Secretary's acknowledgement "that claimants have a general right to fair process in the development and adjudication of their claims and appeals before VA, including under the modernized system," that "principles of fair play may require additional process even where not explicated by statute or regulation," and that "[a] claimant has the right to fair process no matter whether his appeal proceeds through the 'legacy' appellate system or pursuant to the procedures of the [AMA]"); *Frantzis*, 35 Vet.App. at 370-74 (Jaquith, J., dissenting). In this case, the majority's minimization of the process that is due and fair to veterans needlessly and inappropriately casts doubt on 32 years of caselaw and fails to follow it.

### III. *ARNESON*

Ironically, the issue in the consolidated cases we decide today was resolved 14 years ago in a case that did not reach the fair process question: *Arneson*, 24 Vet.App. at 379-89. *See Frantzis*, 104 F.4th at 266, n.1 ("*Arneson* expressly declined to reach the question of whether the fair process doctrine creates a procedural right to a hearing before every Board member who decided a case.").[159] The dispositive holding in *Arneson* was that the Board's failure "to afford Mr. Arneson

---

[159] As previously mentioned, at both our Court and the Federal Circuit, *Frantzis* was decided based on the statutory right of the veteran to testify before his or her decision-maker having vanished without mention. Such disappearance in silence casts doubt on the presumed intentionality of the vanishment, for "[p]resumptions have their place in statutory interpretation, but only to the extent that they approximate reality." *Loper Bright Enterprises v. Raimondo*,

the opportunity for a personal hearing before all members of the Board panel that ultimately decided his case," *Arneson*, 24 Vet.App. at 380, by adding a new decision-maker who did not participate in a hearing, was unduly prejudicial because it "deprived [the veteran] of an opportunity to meaningfully participate in the processing of his claim" in a way that could have altered the outcome. *Id*. at 389. Like Mr. Arneson, Mr. Bilharz and Mr. Pinto were each deprived of an opportunity to meaningfully participate in the processing of their claims in a way that could have altered the outcome. Although *Arneson* didn't expressly say so, the Supreme Court has told us that such deprivation is a due process violation because a meaningful opportunity to be heard is a fundamental requirement of due process. *See*, *e.g.*, *Mathews*, 424 U.S. at 333; *Sapp*, 32 Vet.App. at 140-45 (holding that claimants in a simultaneously contested claim were deprived of their due process right to fairness and a meaningful opportunity to be heard when they testified separately at different Board hearings). So the Court's remands today should require the Board to afford each veteran a Board decision by the member who held his hearing or an opportunity to participate in a hearing before his substituted decision-maker. *Arneson*, 24 Vet.App. at 389.[160] As the Court held in *Arneson*, leaving a substituted Board member to assess credibility based on reviewing a transcript "undermines the claimant's ability to personally impress his credibility upon his factfinder[]." *Id.* at 387. And the substitution "gives an appearance of forum shopping." *Id.* "[R]egardless of the good-faith basis" for assigning the substituted Board member, "there is an appearance of unfairness when an appellant is not notified of such assignment and is not offered a hearing" before the substituted Board member. *Id.* at 387 n.2. "In the claimant-friendly world of veterans benefits, 'the importance of systemic fairness and the appearance of fairness carries great weight.'" *Id.* at 387 (quoting *Hodge*, 155 F.3d at 1363).

---

603 U.S. 369, 399 (2024). Today's reality is that the statute is gone, but the fairness that the Due Process Clause guarantees is not—and it would trump even an affirmative statutory permission to switch decision-makers post-hearing without standards, notice, or a meaningful opportunity to be heard.

[160] At oral argument, Mr. Bilharz's counsel (also acting as amicus curiae in arguing Mr. Pinto's case) asked the Court "to remand Mr. Bilharz's case for a new decision by the same judge [who conducted his hearing] and for Mr. Pinto to have an opportunity for a new hearing and decision by that same judge [who conducted his hearing]." Oral Argument (OA) at 1:16:07-17, https://www.youtube.com/live/RsrUCtcCGVY. I would grant those requests in the Court's remand order.

## IV. THE APPEARANCE OF UNFAIRNESS

The appearance of unfairness is especially discomforting here. There is no indication that either Mr. Bilharz or Mr. Pinto received any advance warning that the Board members who conducted their hearings were being replaced by Board members who would decide their cases without hearing from them directly. The veterans were not afforded any opportunity to object or to ask for a hearing before the replacement Board member. At oral argument, the Secretary suggested that "it's not even clear what standing [Mr. Bilharz] has to raise these issues in the context of the AMA, given that he specifically opted into the AMA and declined a Board hearing." OA at 1:08:53-1:09:17. But that happened long after the November 2018 hearing before the Board member whom Mr. Bilharz expected to decide his case. *Bilharz* R. at 1226-45. As the hearing concluded, the Board member told Mr. Bilharz:

> Well, Mr. Bilharz, I appreciate that you came in to talk to me today. I was taking a look at some of your service records. It looks like there's many more that I, to look at. So I've got quite a bit of work to do to try to sort this out. So as I mentioned before, when your case, from this point, it's docket. They'll send it down to me electronically. And then I'm able to review it. But not prior to . . . such time. I'll do my best with your case.

*Id*. at 1245. In June 2019, the Board member who conducted the hearing issued a decision remanding the veteran's bilateral foot condition claim for a new medical opinion because the existing opinion was inadequate and the "evidence suggest[ed] that there was aggravation of his pes planus in service." *Id*. at 1209. That Board member also remanded Mr. Bilharz's back condition, peripheral neuropathy, and right hip claims for new medical opinions because the existing opinions "applied an erroneous legal standard," *id*. at 1210, and remanded his left hip disability claim as "inextricably intertwined with the claims for service connection for back conditions and right hip disability." *Id*. at 1212. The June 2019 Board decision summarized the evidence and gave detailed remand instructions.

A year later, following a December 2019 examination by a VA osteopathic doctor that addressed some of the veteran's disabilities, VA issued an SSOC denying all claims. *Id*. at 755-62. Mr. Bilharz appealed to the Board, requesting direct review rather than another Board hearing. *Id*. at 747. But his case was assigned to a substitute Board member whose decision—3 years after the remand by the Board member who heard the veteran's testimony—failed to note that Mr. Bilharz was competent to describe his symptoms and failed to address his credibility in doing so, leading

42

the Court to remand the matter today based on the Board's inadequate reasons or bases for its decision. *See ante* at 28. And the substituted Board member relied on a 2015 medical opinion and denied the veteran's cervical spine claim, *Bilharz* R. at 12-13, without even noting that the Board member who had held the hearing had remanded that claim for an addendum opinion because the 2015 opinion had applied an erroneous legal standard, *id*. at 1210-11, or the fact that such an addendum opinion had not been obtained. If the substituted Board member realized the conflict, she did not attempt to reconcile it.

The secret hand-off of Mr. Pinto's case was also fumbled. The substituted Board member who decided the case denied Mr. Pinto's claim for an increased PTSD rating and entitlement to TDIU, first raised at the hearing, by finding a litany of deficiencies in the evidence supporting his PTSD and TDIU contentions. *Pinto* R. at 9-19. As the Court finds, the Board member who held the hearing completely failed to fulfill his *Bryant* duties. *Ante* at 26. Instead, at the hearing, the Board member began by "turn[ing] it over" to Mr. Pinto's representative, *Pinto* R. at 60, interjecting once to say, "it seems like we've really hit the symptomatology and the issues you have with your . . . [PTSD]," *id*. at 72, and then asking one question "to make sure we hit [TDIU]": "you think it would be hard to obtain or maintain employment given your current state of your condition?" *Id.* The Board member concluded the hearing by thanking the veteran and saying:

> [I]t is, you know, very helpful to me to hear directly from you about how your condition impacts you, so thank you for taking the time today, and finally, thank you for your patience as well. I think we all know, sitting here, that VA is not always the fastest at -- at getting through all this stuff, but, you know, I just really appreciate your patience as we work to get you the benefits you're entitled to, sir.

*Id*. at 73.

Both Board members' handling of the hearings and their concluding statements reasonably raised each veteran's expectation (1) that the Board member who held their hearing would decide their appeal and (2) that the Board member had a favorable view of their claims. The complete remands by the Board member who heard Mr. Bilharz's case and that Board member's expressed problems with the negative medical opinions of record and positive statements—such as the "evidence suggests there was aggravation of [Mr. Bilharz's] pes planus in service," "the evidence suggests his [back] conditions may have been caused by service," and "[t]he evidence suggests the [v]eteran has a current left hip disability"—are likely to have reinforced that notion. *Bilharz* R. at 1209-12. So the substitution of Board members who denied all claims with inadequate reasons or

43

bases—in Mr. Bilharz's case, 3 years later—and with a litany of previously unmentioned deficiencies—just a few months after Mr. Pinto's hearing—could be construed as substitutions to secure denials of the veterans' claims.

The danger of a perception of unfairness is heightened by: the lack of notice of substitution and an opportunity to express any objection; the absence of information and standards regarding when post-hearing substitution is necessary or otherwise warranted; and if, when, or how a hearing before the substituted decision-maker is possible. Though not grounded in the special solicitude that veterans receive for their service, sacrifice, and suffering, the federal civil system substitutes judges only if the judge conducting a hearing is unable to proceed, and then "the successor judge must, at a party's request, recall any witness whose testimony is material and disputed and who is available to testify again without undue burden." FED. R. CIV. P. 63.

### V. *RADDATZ?*

Relying on *United States v. Raddatz*, 447 U.S. 667 (1980), the majority states that "[i]n a broad array of administrative proceedings, it is not at all uncommon that the ultimate factfinder did not personally conduct an administrative hearing." *Ante* at 16. However, the cited statement has no place here, where the ultimate factfinder is the Board, which is the entity that does (and did) personally hear the witnesses testify. The cases on which *Raddatz* relies illustrate the importance of that difference, contrasting hearing examiners who determine "the credibility of witnesses as shown by their demeanor or conduct at the hearing" with a board that gives the examiners' findings "probative force" in making its decision. *See Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 493-97 (1951). That can occur in a veterans benefits case, if there is a regional office hearing and a Board appeal on that record. But that is not the situation here, or in any case where the Board is the hearing officer and ultimate factfinder, yet hands the matter to a substitute without findings or conclusions and without notice to the veteran or any opportunity to request a hearing with or even submit argument to the new decision-maker. *See Nat'l Lab. Relation Bd. v. Mackay Radio & Tel. Co.*, 304 U.S. 333, 350-51 (1938) (after testimony before a trial examiner, the case was transferred to the board, which received briefs and oral arguments). When such bi-level handoffs are contemplated, "courts must . . . assume more responsibility for the reasonableness and fairness" of board decisions. *Universal Camera Corp.*, 340 U.S. at 490. What is happening here could not be farther from that principle.

44

Moreover, the administrative proceedings cited in *Raddatz* still generally require the person who presided over the evidentiary hearing to make some initial findings and conclusions on the record, and the reviewing body, therefore, to treat credibility determinations by that person with some level of deference. Section 554 of the APA provides that "[t]he employee who presides at the reception of evidence . . . shall make the recommended decision or initial decision . . . , unless he becomes unavailable to the agency." 5 U.S.C. § 554(d); *see also Beam v. Off. of Navajo & Hopi Indian Relocation*, 624 F. Supp. 3d 1069 (D. Ariz. 2022) ("This Court does not overlook that an [independent hearing officer's (IHO's)] credibility findings are typically 'granted substantial deference by reviewing courts.'") (quoting *De Valle v. Immigr. & Naturalization Serv.*, 901 F.2d 787, 792 (9th Cir. 1990)). In the context of the National Labor Relations Board, "the Board's policy of reviewing an [administrative law judge's (ALJ's)] credibility findings hinges on the ALJ's 'advantage of observing the witnesses while they testified.'" *Vance v. Nat'l Lab. Relations Bd.*, 71 F.3d 486 (4th Cir. 1995) (quoting *Standard Dry Wall Prods., Inc.*, 91 N.L.R.B. 544, 545 (1950), *enforced*, 188 F.2d 362 (3d Cir. 1951)). The Department of Labor Benefits Review Board also recognizes the weight of the ALJ's credibility determinations based on his or her ability to personally observe the witnesses' demeanor. *See, e.g.*, *Marcus v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, 548 F.2d 1044 (D.C. Cir. 1976) ("The ALJ observed petitioner's demeanor at the hearing, as we did not, and it was for him to judge the credibility of any testimony and to weigh the evidence adduced therefrom."). And Securities and Exchange Commission (SEC) regulations cited by *Raddatz* (which are now set forth in 17 C.F.R. § 201.411) provide for an initial decision by the hearing officer that includes factual findings, legal conclusions, and, where appropriate, orders relief. That initial decision may be reviewed by the SEC, but it will accept the "fact[]finder's credibility finding, absent overwhelming evidence to the contrary." *In re Clawson*, Exchange Act Release No. 48143, 2003 WL 21539920, at *2 (July 9, 2003).

> *Arneson* captured a similar principle for our Court:

> The significance placed on a veteran's sworn testimony is further demonstrated by the standard under which the Court reviews the Board's assessment of a witness's credibility. Such credibility determinations are factual findings that the Court reviews under the "clearly erroneous" standard. . . . It is well established that the assessment of the credibility of the veteran's sworn testimony is a function for the [Board] in the first instance and [ ] it is not for this Court to find . . . that that sworn testimony . . . is credible. . . . One obvious reason the Court defers to the Board's assessment of a witness's credibility is that the Board has had the opportunity to observe the witness firsthand, whereas the Court has not.

45

*Arneson*, 24 Vet.App. at 382-83; *see Cook*, 28 Vet.App. at 337. If both the Board member who decides the case and the Court are alike in looking only at cold records, *see Leatherbury v. Dep't of Army*, 524 F.3d 1293, 1304 (Fed. Cir. 2008), there is no reason for deference. *See Haebe v. Dep't of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) ("[T]he deference requirement . . . is fundamentally related to the observation of witness[ ] demeanor."). Under the AMA, the Board member conducting the hearing does not make any findings for the deciding Board member to review, so any impressions about the veteran's credibility from the Board member who benefited from the live testimony are lost.

## VI. STARE DECISIS

Sadly, today's decision adds to the evidence that stare decisis has fallen on hard times at this Court. *See Kernz v. McDonough*, 36 Vet.App. 372, 392 (2023) (en banc) (Bartley, C.J., dissenting from the abrogation of the holding of *Cerullo v. Derwinski*, 1 Vet.App. 195, 196-97 (1991), "that when [a notice of appeal] is filed, plenary jurisdiction over the appealed issue transfers from the Board to the Court, and the Board is thereafter prohibited from acting on that issue without the Court's permission."), *appeal docketed*, No. 24-1171 (Fed. Cir. Nov. 21, 2023); *De Hart v. McDonough*, 37 Vet.App. 371, 385 (2024) (Jaquith, J., dissenting from the majority forsaking the precedential panel opinion in *Chavis v. McDonough*, 34 Vet.App. 1 (2021), in favor of the *Chavis* dissent). In this case, the Secretary argued, "I don't believe that it's appropriate for the court to simply rely on its own caselaw." OA at 38:50-57. But the longstanding rule is that a panel may not render a decision that conflicts materially with an earlier panel decision. *Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992). "Only the en banc Court may overturn a panel decision." *Id.* The majority blurs these lines by declaring that "arguments about fair process are properly understood to be nothing more than due process contentions in other clothes," *ante* at 2, and by "concluding that fair process is, at base, nothing more than a requirement that VA provide claimants with due process," *ante* at 10. The majority offers a disclaimer:

> [W]e need not definitely resolve the continued validity of our decisions that may consider fair process to be more expansive than due process today because we hold that due process and fair process principles, to the extent there are differences between them, lead to the same result in these appeals.

46

*Ante* at 3. But the significant conflict between the majority's declaration and conclusion and this Court's precedent is unmistakable.

"Stare decisis—'the idea that today's Court should stand by yesterday's decisions'—is 'a foundation stone of the rule of law.'" *Ravin v. Wilkie*, 31 Vet.App. 104, 118 (2019) (Falvey, J., dissenting) (quoting *Kimble v. Marvel Ent.*, 576 U.S. 446, 455 (2015)). Stare decisis "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). "[Stare decisis] is a doctrine of judicial modesty and humility." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 363 (2022) (Breyer, J., dissenting). "The 'glory' of our legal system is that it 'gives preference to precedent rather than . . . jurists.'" *Id.* at 388 (quoting H. Humble, *Departure From Precedent*, 19 MICH. L. REV. 608, 614 (1921)). If the Court is to depart from decades of precedent to reorient the veterans benefits system away from ideals such as fairness and embrace the notion that "no matter how well-meaning, paternalism to our veterans has served its purpose and may now be doing more harm than good," Michael P. Allen, *Due Process and the American Veteran: What the Constitution Can Tell Us About the Veterans' Benefits System*, 80 U. CIN. L. REV. 501, 535 (2012), it should be by full Court vote.

The fairness failure here cannot fairly be attributed to the Federal Circuit. The Federal Circuit did not purport to eradicate fair process in *Frantzis*; it merely agreed with the majority that,"[t]o the extent Mr. Frantzis argues the fair process doctrine creates a procedural right, the argument was not presented below and is thus forfeited." *Frantzis*, 104 F.4th at 266. Fairness was the object of the Federal Circuit's holding that "a veteran alleging a service-connected disability has a due process right to fair adjudication of his claim for benefits." *Cushman v. Shinseki*, 576 F.3d 1290, 1292 (Fed. Cir. 2009). The Federal Circuit later examined our Court's fair process cases in determining that the veteran was not denied fair process in *Sprinkle*, 733 F.3d at 1185-87. And the Federal Circuit's statement that "[t]he fair process doctrine is a recognition that due process applies in the claimant process" and requires the Board to provide reasonable notice of evidence and a reasonable opportunity to respond to it, citing *Thurber*, 5 Vet.App. at 126, reflects that fair process is what veterans benefits claimants are due—or that due process requires fairness, if that formulation is preferred. *Frantzis*, 104 F.4th at 266. Either way, veterans have the right to a meaningful opportunity to be heard by the actual decision-maker when they choose a Board

47

hearing. I dissent from so much of this decision as withholds and fails to recognize that right. In my view, our caselaw suggests that fair process flows from applying due process principles in the unique, pro-veteran system Congress crafted, aligning the interests of VA and its beneficiaries in ensuring that veterans receive the benefits due them.

Mr. Bilharz and Mr. Pinto were denied both fair process and due process by the Board's mishandling of their claims, mostly stemming from inserting adjudicators who had not heard their testimony. The remands of their cases should acknowledge their right to have the person who heard their case decide it, either by having the Board member who held the hearing render the decision or having the substituted Board member afford the veteran another hearing. When a veteran has a meaningful opportunity to speak to a decision-maker who must listen, "substantively unfair and simply mistaken deprivations" of benefits can be prevented. *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972). The Court should not co-pilot the bureaucracy's bulldoze over "the bedrock of veteran's entitlement to benefits," which is "fair process in the adjudication of their claims." *Roberts v. Shinseki*, 23 Vet.App. 416, 432 (2010) (Hagel. J., concurring), *aff'd in part*, 647 F.3d 1334 (Fed. Cir. 2011).